CADLE, Appellant, *v.* TOWN OF BAKER, Respondent.

(No. 3,653.)

(Submitted June 17, 1915.   Decided July 1, 1915.)

[149 Pac. 960.]

*Counties—County Seat Elections—Contests—Statutes—Corrupt*
*Practices Act—Equity—Scope of Relief—Constitution.*

County Seat Elections—Contests—Statutes.
    1.   *Held*, that inasmuch as neither the general election laws nor the
    statutes under which new counties are created and county seats selected,
    nor the Corrupt Practices Act (Laws 1913, p. 593), authorize a con-
    test of the election for the location of a county seat, a demurrer to
    the petition seeking to initiate such a proceeding was properly sustained.
Elections—Corrupt Practices Act—Constitution.
    2.   If section 49 of the Corrupt Practices Act (Laws 1913, p. 613)
    permits a candidate who did not receive the highest number of legal
    votes to be declared elected upon a judgment of ouster in a contest
    proceeding, it is void as in contravention of section 13, Article IX, of
    the Montana Constitution, which declares that the person receiving the
    highest number of legal votes shall be declared elected.
Same—Corrupt Practices—Equity—Scope of Relief—Petition.
    3.   Equity will intervene to prevent a city or town from unlawfully
    obtaining the county seat where it did not receive the highest number
    of legal votes, provided it is alleged, among other things, that the cor-
    rupt practices charged in the petition operated to influence a sufficient
    number of votes to change the result of the election.

*Appeal from District Court, Fallon County; C. C. Hurley,*
*Judge.*

ELECTION CONTEST by Wilbert W Cadle against the Town of
Baker.   From a judgment of dismissal, plaintiff appeals.   Af-
firmed.

*Mr. George W. Farr* and *Mr. Leon L. Wheeler,* for Appellant,
submitted a brief; *Mr. Farr* argued the cause orally.

It is conceded that contest proceedings will not lie under
the general law for the contest of county seat elections, and
that this contest can be sustained only upon the ground that
the initiative measure known as the Corrupt Practices Act gives
the right.   While in the ordinary construction of statutes the
courts are not bound by the apparent policy of the law, never-
theless they may and should look to it for the purpose of discov-

ering, if possible, the intention of the framers of the Act, and that intention must, if discovered, and if possible, be pursued. (*Power* v. *Board of County Commissioners,* 7 Mont. 82, 14 Pac. 658; *Lerch* v. *Missoula Brick etc. Co.,* 45 Mont. 314, Ann. Cas. 1914A, 346, 123 Pac. 25; *State ex rel. McGowan* v. *Sedgwick,* 46 Mont. 187, 127 Pac. 94; *Johnson* v. *Butte & Superior Copper Co.,* 41 Mont. 158, 48 L. R. A. (n. s.) 938, 108 Pac. 1057.) And in construing a statute courts must look to the words employed and the evils to be remedied. (*Johnson* v. *Butte & Superior Copper Co., supra.*) In the case of *Johnston* v. *Baker,* 167 Cal. 260, 139 Pac. 86, it is held that ''a statute must be construed with reference to the object to be accomplished by it, and in ascertaining such object it is proper to consider the necessity for its enactment.'' (To the same effect, see *Golden & Co.* v. *Justice's Court,* 23 Cal. App..778, 140 Pac. 49.) If, in the interpretation of the statute, the words are to be construed in their natural, plain and ordinary signification (*Hedges* v. *County Commissioner,* 4 Mont. 280, 1 Pac. 748; *State* v. *Cudahy Packing Co.,* 33 Mont. 179, 114 Am. St. Rep. 804, 8 Ann. Cas. 717, 82 Pac. 833; *State ex rel. Gillett* v. *Cronin,* 41 Mont. 293; 109 Pac. 144; *State ex rel. Anaconda C. Mining Co.* v. *District Court,* 26 Mont. 396, 68 Pac. 570, 69 Pac. 103; *Jay* v. *School District No. 1,* 24 Mont. 219, 61 Pac. 250), then there would be given to the word ''office,'' Webster's definition of ''a special duty, trust or position conferred by an exercise of governmental authority and for a public purpose,'' and as ''the place where a particular business or service is transacted,'' and as ''any of various buildings or sets of rooms in which the business of some branch of governmental administration is conducted, or from which it is directed.'' And the courts have likewise defined the word. In the case of *Brossack* v. *Interborough Rapid Transit Co.,* 66 Misc. Rep. 190, 121 N. Y. Supp. 215, the court defined an ''office'' as a place where service is rendered or business is done. A county seat is the office of the seat of government of the county. It is the place where the business of the county is transacted. An ''office'' means something to be held

(*Ross* v. *Board of Chosen Freeholders,* 69 N. J. L. 291, 55 Atl. 310). We submit that a county seat election is an election to an office, the office of county seat. It may be properly considered and treated as an office. The intrinsic meaning of the word "office" is expressed by the old English word "place." (*People* v. *Nichols,* 52 N. Y. 478, 11 Am. Rep. 734.) It was contended in the case of *Saari* v. *Gleason,* 126 Minn. 378, 148 N. W. 293, that the statute gave no right to contest an election for violation of the provisions of the Corrupt Practices Act of the state of Minnesota, and the court held that the Act of that state, which is in very many respects similar to the Montana Act, provided two remedies, one by criminal prosecution and conviction, and a supplemental judgment of ouster, and the other by the more summary and expeditious means of an election contest.

*Messrs. Booth & Dousman, Martin Flasted, L. A. Conser, P. C. Cornish, J. A. Williams* and *Goble & Goble,* for Respondent, submitted a brief; *Mr. Edwin S. Booth* argued the cause orally.

The right to contest an election, being a statutory right, the election for the location of a permanent county seat cannot be contested unless such right is conferred in the Act authorizing such election, or unless the provisions of the election laws of the state give the right. (*Calaveras County* v. *Brockway,* 30 Cal. 325; *People* v. *Glenn County,* 100 Cal. 419, 38 Am. St. Rep. 305, 35 Pac. 302; *Waite* v. *Brendlin,* 26 Cal. App. 31, 145 Pac. 739; *Double* v. *McQueen,* 96 Mich. 39, 55 N. W. 564; *Pinkerton* v. *Staninger,* 101 Mich. 273, 59 N. W. 611; *Thomas* v. *Franklin,* 42 Neb. 310, 60 N. W. 568.)

A suit cannot be brought for the contesting of the location or relocation of a county seat at the instance of a private citizen, for the reason that he has no such interest in that question as entitles him to maintain an action on which such question can be adjudicated. (*Thomas* v. *Franklin,* above; *Caruthers* v. *Harnett,* 67 Tex. 127, 131, 2 S. W. 523; *Walker* v. *Tarrant County,*

20 Tex. 16, 20; *Harrell* v. *Lynch,* 65 Tex. 146, 151.) No person can have any property rights in the location of a county seat, and, therefore, a private citizen has no standing to maintain a suit to prevent the removal. No citizen can have any pecuniary interest in the location of a county seat. (10 Am. & Eng. Ency. of Law, 899; *Luce* v. *Fensler,* 85 Iowa, 596, 52 N. W. 517; *Attorney General* v. *Board of Supervisors,* 33 Mich. 289; *McMillen* v. *Butler,* 15 Kan. 62; *Hipp* v. *Board of Supervisors,* 62 Mich. 456, 29 N. W. 77; *Newton* v. *Commissioners,* 100 U. S. 548, 25 L. Ed. 710; *Thomas* v. *Franklin Co., supra.*) It is alleged in the complaint that the town of Ekalaka is an incorporated town under the laws of the state of Montana. It is likewise alleged that the town of Baker is an incorporated town. The contestant, W. W. Cadle, does not allege that he is a resident of the town of Ekalaka. He alleges no interest other than as an elector of the county.

A candidate is not liable for the acts of his agent unless he directs or authorizes such act. (10 Am. & Eng. Ency. of Law, p. 781; *Duffy* v. *Mason,* 1 Ellsw. El. Cas. 368.) In order that a candidate shall become disqualified in consequence of the Corrupt Practices Act of his agent, they must have been committed with his knowledge or consent, express or implied. (10 Am. & Eng. Ency. of Law, p. 794, and note.)

Mere treating of itself is not an offense. It is treating with a corrupt intent and motive to produce an effect upon an election which is an offense. Treating as a custom prevalent in the country without a corrupt intent will not avoid an election. (*McLennan* v. *Craig,* Hodgin El. Cas. 16; *Batty* v. *Currie,* Hodgin El. Cas. 47.) When it is sought to set aside an election because of treating, the question of intent with which the treat was given is material, but only becomes so because of a corrupt intent. (10 Am. & Eng. Ency. of Law, 788; *City of Blackwell* v. *City of Newkirk,* 31 Okl. 304, Ann. Cas. 1913E, 341, 121 Pac. 260; *Bristow* v. *City of Sapulpa,* 33 Okl. 484, 126 Pac. 446.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At the general election held in November, 1914, the towns of Baker and Ekalaka were rival candidates for the permanent county seat of Fallon county. The canvassing board returned that Baker received the highest number of votes, and this proceeding was instituted to contest the election. A demurrer to the petition was sustained, and contestant, electing to stand on his pleading, suffered judgment, of dismissal to be entered against him and appealed.

The only question necessary to be decided is: Do the laws [1] of this state provide for a contest of an election to determine the location of a permanent county seat? That such a contest is not authorized by the general election laws of the state, or by the statutes under which new counties are created and county seats selected, is conceded at the outset. In their brief, counsel for appellant frankly state their position as follows: "This contest can be sustained only upon the ground that the initiative measure known as the Corrupt Practices Act gives the right."

For many years we have had an effective election contest statute (secs. 7234–7249, Rev. Codes), but prior to the time the Corrupt Practices Act was adopted, in November, 1912 (Laws 1913, p. 593), an election to office was the only subject of contest. Our inquiry is directed, then, to ascertain to what extent, if at all, existing statutes upon the subject of election contests were enlarged or extended by this latter Act. A comparison of the two statutes may be made most advantageously by considering the subject under the three general heads: (a) Who may contest; (b) what may be contested; and (c) what are the grounds of contest.

Section 7234, Revised Codes, provides: "Any elector of a county, town or city, or of any political subdivision of either, may contest the right of any person declared to be elected to an office to be exercised therein, for any of the following causes.
*   *   *   " Section 45 of the Corrupt Practices Act provides:

"Any elector of the state, or of any political or municipal division thereof, may contest the right of any person to any nomination or office for which such elector has the right to vote, for any of the following causes. * * * " So far, then, as our inquiry is directed to the subject "Who may contest," it is answered by these statutes in identical terms: Any elector of the state or subdivision thereof where the election is held may maintain a contest, and it is apparent at once that no change in the law was intended so far as this feature of the question is involved. Section 7234, above, provides only for the contest of an election, whereas section 45, above, permits a nomination as well as an election to be made the subject of contest, and in this respect extends the law upon the subject. This addition was doubtless made in anticipation that the general primary election law (Laws of 1913, p. 570) would be adopted, as it was.

The grounds of contest under the earlier Act are enumerated in section 7234, above; under the later Act, in section 45, above. In point of fact, the change effected is slight. The later statute defines with more particularity the Acts which constitute corrupt practices, as a comparison of its provisions with sections 8124–8175, Revised Codes, will demonstrate. Under the Revised Codes, a violation of the election laws was punishable by fine or imprisonment, or fine and imprisonment (sections 8168, 8169, 8170, 8171, 8172, 8173); under the latter Act, by fine or imprisonment, fine and imprisonment, or forfeiture of office (sections 37, 39, 50, 51). So far as the question before us is concerned, the changes indicated above are the only ones of consequence effected by the Corrupt Practices Act. Notwithstanding the very explicit terms employed in section 45, above, which seem to limit the authority of an elector to contest only the right of a *person* to a nomination or election, counsel for appellant insist that when that language is considered in connection with other expressions in the Act and with the title and manifest purpose of the measure, authority may be found by virtue of which this proceeding can be main-

tained.  The other expressions in the Act to which reference
is made are in sections 38, 39  and 40, as follows:

Section 38: "Where, upon the trial of any action or pro-
ceeding under the provisions of this Act for the contest of the
right of any person declared nominated or elected to any of-
fice.  *  *  *  "

Section 39: "If, upon the trial of any action or proceeding
under the provisions of this Act, for the contesting of the right
of any person declared to be nominated to an office, or elected
to an office.  *  *  *  "

Section 40: "Any action to contest the right of any person
declared elected to an office, or to annul and set aside such elec-
tion, or to remove from or deprive any person of an office of
which he is the incumbent, for any offense mentioned in this
Act.  *  *  *  "

Instead of aiding appellant, these references apparently lend
color to respondent's contention that the authority to contest
is restricted to an attack upon the right of *a person,* that is, a
human being, declared nominated or elected to office.  The
term "persons," however, is defined in section 10 of the Act,
as follows: " 'Persons' shall apply to any individual, male or fe-
male, and, where consistent with collective capacity, to any
committee, firm, partnership, club, organization, association,
corporation, or other combination of individuals."  An incor-
porated city or town is a municipal corporation; and the ar-
gument is advanced that we have in these several sections
recognition of authority for attacking the right of a city or
town declared to have been chosen the seat of county govern-
ment.  The terms as employed in the definition are very
broad, but we are satisfied that they were not intended to com-
prehend a candidate for county seat honors.  The references
above are all to a person declared elected to office, and the same
section also defines this term as follows: " 'Public office' shall
apply to any national, state, county or city office to which a
salary attaches and which is filled by the voters, as well as to
the office of presidential elector, United States senator, or pre-

siding officer of either branch of the legislature." Whatever else a county seat may be, it is not an office to which a salary is attached.

In their extremity, counsel for appellant are driven to urge this court to adopt and apply the definition of "persons" as given above, but to reject the definition of "public office" found in the same section. It is true that neither of these definitions is to be used exclusively. The opening sentence of section 10 is: "Terms used in this Act shall be construed as follows, unless (some) other meaning is clearly apparent from the language or context, or unless such construction is inconsistent with the manifest intent of the law." Then follow the definitions given above and others not material here. It is not contended, and could not be, that a meaning of the term "public office" different from that given is clearly apparent from the language of the sections referred to or the context; but it is insisted that a construction of those sections in harmony with the definition thus given as an aid in the construction of the Act is inconsistent with the manifest intent of the law. If this be true, it would be interesting to know what purpose the definition was intended to serve. We agree with counsel that the object to be attained by this Act is to prevent corrupt practices in all elections. The same end was likewise in view in the enactment of the former Corrupt Practices Act, now found in sections 8124–8175, Revised Codes. We do not agree with counsel, however, in their assumption that the present statute seeks to accomplish its purpose in all cases through the medium of an election contest. It is clearly within the range of legislative activity to provide for a contest of every election, but that the Corrupt Practices Act does not purport to do so is fairly deducible from its title as well as its text. The title of the Act follows: "A bill to propose, by initiative petition a law to limit candidates' election expenses; to define, prevent and punish corrupt and illegal practices in nominations and elections; to secure and protect the purity of the ballot; to provide for furnishing information to the electors and to provide

the manner of conducting contests for nominations and elections in certain cases.'' So far as this title is indicative of legislative intention, it fails to suggest a purpose to alter or enlarge existing statutes providing for election contests. Instead of making provision for such contests, it merely indicates a purpose to provide the manner in which contests already allowed by the Codes are thereafter to be conducted, and even this Practice Act is in terms made available only in certain cases. The body of the Act does extend existing statutes by making a nomination the subject of contest and by adding an additional punishment for a violation of the election laws, but further than that it does not go. It is interesting to note that, while counsel for appellant concede that the Code provisions do not contemplate a contest of an election for the location of a county seat, they insist that the Corrupt Practices Act does do so; and yet an examination of the two statutes will disclose that the same terms are employed in each, and in the same connection and in the same sense. For instance: In section 7234, Revised Codes, is found the language quoted above; in section 7238 is this provision, ''When an elector contests the right of any person declared elected to such office,'' *etc.* There is not anything in the history of the Corrupt Practices Act, in its title or text, to suggest a meaning for ''persons'' or ''public office'' different from that intended to be applied to the same terms when used in the Code sections above. That the Corrupt Practices Act does not expressly authorize this contest must be admitted. To hold that it impliedly authorizes it would do violence to the language employed, involve a total disregard of the definition of ''public office'' given therein, and convict the electors of this state of a lack of sufficient intelligence to express their intention in plain and unmistakable terms. In other states where county seat elections are subject to contest, the lawmakers have not experienced any difficulty in making their meaning plain, and we are satisfied that if it had been the intention to subject such elections to contests in this state, by the provisions of the Corrupt Practices Act or other legislation, appropriate lan-

guage could have been commanded to express such intention; and since it nowhere appears, we feel justified in our conclusion that such was not the intention. The exception of this character of election from the operation of the contest statutes may have been effected designedly or it may be the result of oversight; but even so, the courts do not possess law-making power even to the extent of supplying lapses in the law. For the same reasons the proceeding cannot be sustained as one instituted under the Corrupt Practices Act to avoid the election.

In passing, it is worthy of note that certain provisions of the Corrupt Practices Act appear to be in direct conflict with the [2] state Constitution. In section 49 it is provided that if upon an election contest "judgment of ouster against a defendant shall be rendered, said judgment shall award the nomination or office to the person receiving next the highest number of votes." If by this provision is meant that a candiate who does not receive the highest number of legal votes may be declared elected, it would seem to be in hopeless conflict with the terms of section 13, Article IX of our state Constitution, which reads: "In all elections held by the people under this Constitution, the person or persons who shall receive the highest number of legal votes shall be declared elected." While a successful candidate may be deprived of the fruits of his victory by being required to forfeit his office as a punishment for wrongdoing, we undertake to say that it is beyond the law-making power to declare elected to an office anyone who has not received the highest number of legal votes therefor.

The Codes and the Corrupt Practices Act provide for certain contests; they likewise provide severe punishments for violations of the election laws, and these remedies were doubtless deemed sufficient to make the statutes effective for the purposes intended. The laws of this state do not provide for a contest of an election for the location of a county seat, and for this reason the demurrer to the petition was properly sustained.

While a court of equity would intervene to prevent a city or [3] town unlawfully obtaining the county seat, in any instance

where it did not receive the highest number of legal votes, this proceeding cannot be upheld as one instituted in equity for such purpose, for the reason that it is not alleged that the corrupt practices charged operated to influence a sufficient number of votes to change the result of the election.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

