POE, APPELLANT, *v.* SHERIDAN COUNTY ET AL., RESPONDENTS.

(No. 3,670.)

(Submitted March 23, 1916. Decided April 25, 1916.)

[157 Pac. 185.]

*County Seat Elections — Jurisdiction — Parties — Defect—Demurrer—Attorney General—County Attorney—County Commissioners—Laches.*

County Seat Elections—Jurisdiction.
    1. In the absence of statutory provision authorizing a "contest" of a county seat election alleged to have been the result of fraud and corrupt practices, and *quo warranto* not being available, the district court has jurisdiction under its equity powers to hear and determine such a matter, until such time as the law shall provide the procedure.
    [As to election contests in case of change of county seat, see note in Ann. Cas. 1912C, 691.]

Same—Plaintiff—Capacity to Sue—Demurrer.
    2. Want of authority in a taxpayer to maintain a proceeding of the kind referred to above forms no ground of special demurrer, and has nothing to do with lack of "legal capacity to sue," men-

tioned in subdivision 2 of section 6534, Revised Codes, meaning that plaintiff shall be free from such general disability, as infancy or insanity, which must appear on the face of the complaint to make the pleading demurrable.

Same—Defect of Parties—Demurrer.

3. Under section 6535, Revised Codes, a demurrer for defect of parties must point out the particulars relied on, showing the absence of necessary, as distinguished from merely proper, parties.

Same—Who may Sue.

4. Any citizen, who is also an elector and taxpayer, may be the party plaintiff in a proceeding to determine the validity of a county seat election.

Same—Duties of Attorney General—Parties.

5. It is not one of the duties of the attorney general of the state to prosecute an inquiry into alleged fraudulent and corrupt practices at a county seat election; hence a demurrer to the complaint in such a proceeding for defect of parties plaintiff, because of his absence, was improperly sustained.

Same—County Attorney—Parties.

6. The county attorney of the county referred to above, himself made one of the defendants, and as the legal adviser of his co-defendant county commissioners, was not a proper party plaintiff in the proceeding, and a demurrer for defect of parties because he had not been joined with plaintiff did not lie.

Same—County Commissioners—Parties.

7. Inasmuch as the co-operation of the commissioners of a county, the seat of government of which was claimed to have been illegally located, was necessary to a complete adjudication of the matter, they were properly made parties defendant, even though innocent of any wrongdoing.

Same—Laches—What Does not Constitute.

8. A suit to test the legality of a county seat election, brought fourteen weeks after the result was declared and fifteen weeks after the election had taken place, was not barred by laches.

*Appeal from District Court, Sheridan County; F. N. Utter, Judge.*

SUIT by Clinton J. Poe against Sheridan County, the Board of County Commissioners, and others. From a judgment of dismissal, plaintiff appeals. Judgment reversed and cause remanded with directions to overrule the demurrer.

*Messrs. Norris, Hurd & McKellar* and *Mr. C. E. Comer,* for Appellant, submitted a brief; *Mr. Edwin L. Norris* argued the cause orally.

Want of legal capacity to sue refers to a general legal disability, such as infancy, idiocy, lunacy or want of title in the plaintiff to the character in which he sues. Therefore when

the plaintiff is a natural person under no legal disability to maintain action, and, in this case such does not appear upon the face of the complaint, a demurrer on the ground of want of capacity to sue is not well taken. (31 Cyc. 296; *Pence v. Aughe,* 101 Ind. 317; *Hunt* v. *Monroe,* 32 Utah, 428, 11 L. R. A. (n. s.) 249, 91 Pac. 269; *Louisville & N. R. Co.* v. *Brantley's Admr.,* 96 Ky. 297, 49 Am. St. Rep. 291, 28 S. W. 477; *Winfield Town Co.* v. *Maris,* 11 Kan. 128; *Bem* v. *Shoemaker,* 7 S. D. 510, 64 N. W. 544; *Rinehart* v. *Hasco Bldg. Co.,* 153 App. Div. 153, 138 N. Y. Supp. 258; *Missouri K. & T. Ry. Co.* v. *Lenahan,* 39 Okl. 283, 135 Pac. 383.) That a citizen and taxpayer has the legal right to maintain any action in this state necessary to enforce a public right has been a basic principle of our jurisprudence since the case of *Chumasero* v. *Potts,* 2 Mont. 242, was decided in 1875. And this principle is supported by the overwhelming weight of authority. (Pomeroy's Code Remedies, 3d ed., sec. 142; *Sweatt* v. *Faville,* 23 Iowa, 321; *Todd* v. *Rustad,* 43 Minn. 500, 46 N. W. 73; *Harney* v. *Charles,* 45 Mo. 157; *Mitchell* v. *Lasseter,* 114 Ga. 275, 276, 40 S. E. 287; *Doan* v. *Board of Commissioners,* 3 Idaho, 38, 26 Pac. 167; *Lanier* v. *Padgett,* 18 Fla. 842; *Gibson* v. *Supervisors,* 80 Cal. 359, 22 Pac. 225; *Simpson County* v. *Buckley,* 81 Miss. 474, 33 South. 650, 85 Miss. 713, 38 South. 104; *Lindsay* v. *Allen,* 112 Tenn. 637, 82 S. W. 171; *Kilgore* v. *Jackson,* 55 Tex. Civ. App. 99, 118 S. W. 819; *Dickey* v. *Reed,* 78 Ill. 261; *Adams* v. *Smith,* 6 Dak. 94, 50 N. W. 720; *Henderson* v. *Marcell,* 1 Kan. 137; *Brown* v. *Randolph County Court,* 45 W. Va. 827, 32 S. E. 165; *Krieschel* v. *Board of Commissioners,* 12 Wash. 428, 436, 41 Pac. 186; *Marsden* v. *Harlocker,* 48 Or. 90, 120 Am. St. Rep. 786, 85 Pac. 328; *State* v. *Langlie,* 5 N. D. 594, 32 L. R. A. 723, 67 N. W. 958.)

A demurrer on the ground of defect in the parties plaintiff reaches only the point that there are parties omitted who should have been made parties plaintiff. (Pomeroy's Code Remedies, 3d ed., sec. 206; *Palmer* v. *Davis,* 28 N. Y. 242; *Lowry* v. *Jackson,* 27 S. C. 318, 3 S. E. 473; *Boldt* v. *Budwig,* 19 Neb. 739,

28 N. W. 280; *Powers* v. *Bumcratz,* 12 Ohio St. 273; *Berkshire* v. *Shultz,* 25 Ind. 523; *Mornan* v. *Carroll,* 35 Iowa, 22; *Truesdell* v. *Rhodes,* 26 Wis. 215.) A demurrer on this ground must show that the parties are too few, and name those who should be brought in. (*Bakes* v. *Reese,* 150 Pa. St. 44, 24 Atl. 634; *Dewey* v. *State,* 91 Ind. 173; *Hudson* v. *Archer,* 4 S. D. 128, 55 N. W. 1099; *Wolf* v. *Eppenstein,* 71 Or. 1, 140 Pac. 751; *Davis* v. *Chouteau,* 32 Minn. 548, 21 N. W. 748.)

In a court of general jurisdiction a demurrer for want of jurisdiction of the subject of the action will not lie unless the complaint upon its face affirmatively shows lack of jurisdiction. (Sec. 6534, Rev. Codes; *Beach* v. *Spokane Ranch & Water Co.,* 25 Mont. 379, 65 Pac. 111; *Doll* v. *Feller,* 16 Cal. 432; *Mildeberger* v. *Franklin,* 130 App. Div. 860, 115 N. Y. Supp. 903; *Foster* v. *Roseberry,* 98 Tex. 138, 81 S. W. 521; *Pollock* v. *Carolina etc. Loan Assn.,* 48 S. C. 65, 59 Am. St. Rep. 695, 25 S. E. 977; *Dorman* v. *Ames,* 9 Minn. 180; *Continental Life Ins. Co.* v. *Volger,* 89 Ind. 572, 46 Am. Rep. 185.)

The district courts of this state are courts of general jurisdiction, and have jurisdiction in all cases at law and in equity in which the value of the property in controversy exceeds fifty dollars. (Const., Art. VIII, sec. 11; sec. 6275, Rev. Codes.) Unless want of jurisdiction of the subject of the action affirmatively appears, the presumption must be indulged that the district court possesses jurisdiction (*Beach* v. *Spokane Ranch & Water Co.,* 25 Mont. 379, 65 Pac. 111). Although the law providing for a county seat election fails to provide a method for contesting the election, a court of equity has jurisdiction to entertain a proceeding impeaching the election for illegality and fraud, and will award whatever relief the exigencies of the case require. (11 Cyc. 379; McCrary on Elections, 4th ed., sec. 389; *Patterson* v. *People,* 23 Colo. App. 479, 130 Pac. 618; *Calaveras County* v. *Brockway,* 30 Cal. 325; *Dickey* v. *Reed,* 78 Ill. 261; *Simpson County* v. *Buckley,* 85 Miss. 713, 38 South. 104; *Maxey* v. *Mack,* 30 Ark. 472, 473; *Ulrich* v. *Clement* (Sup. Ct. S. T.), 124 N. Y. Supp. 133; *Shaw* v. *Cir-*

*cuit Court,* 27 S. D. 49, 129 N. W. 907; *Lanier* v. *Padgett,* 18
Fla. 842; *Sweatt* v. *Faville,* 23 Iowa, 321; *State* v. *Commissioners
of Hamilton County,* 35 Kan. 640, 11 Pac. 902; *Marsden* v.
*Harlocker,* 48 Or. 90, 120 Am. St. Rep. 786, 85 Pac. 328; *Doan*
v. *Board of Commissioners,* 3 Idaho, 38, 26 Pac. 167; *Lindsay*
v. *Allen,* 112 Tenn. 637, 82 S. W. 171; *Kilgore* v. *Jackson,* 55
Tex. Civ. App. 99, 118 S. W. 819; *Krieschel* v. *Board of Commis-
sioners,* 12 Wash. 428, 41 Pac. 186; *Mitchell* v. *Lasseter,* 114 Ga.
275, 40 S. E. 287; *Todd* v. *Rustad,* 43 Minn. 500, 46 N. W. 73.)

All that is required to make the complaint sufficient in cases
of this character is that the plaintiff shall definitely apprise
the defendants of the charges relied upon, so that they may
be prepared to meet them with appropriate proof. (*Stephens*
v. *Nacey,* 47 Mont. 479, 133 Pac. 361; *Sweatt* v. *Faville,* 23
Iowa, 321, 322; *Jones* v. *Commissioners,* 107 N. C. 248, 12
S. E. 69; *Boren* v. *Smith,* 47 Ill. 482; *Doan* v. *Board of Com-
missioners,* 3 Idaho, 38, 26 Pac. 167; *Gibson* v. *Supervisors,*
80 Cal. 359, 22 Pac. 225; *Brown* v. *Randolph County Court,* 45
W. Va. 827, 32 S. E. 165.)

*Mr. Howard M. Lewis, Mr. Paul Babcock* and *Mr. Geo. A.
Bangs,* for Respondents, submitted a brief; *Mr. Bangs* argued
the cause orally.

The function performed in the selection or designation of
the seat of government, be it either of a city, township, county,
state or national, is purely legislative in its nature; it does
not participate, in the slightest, either of the judicial or execu-
tive. Agents appointed by the legislature to select a county
seat are clothed with the sovereign power and discretion of the
state, which discretion, so far as it depends upon the exercise
of their judgment, no court has a right to control unless they
violate private rights. (11 Cyc. 368; *Jewell* v. *Weed,* 18 Minn.
272; *Walker* v. *Tarrant County,* 20 Tex. 16; *Leach* v. *Nez
Perce,* 24 Idaho, 322, 133 Pac. 926; *Bagot* v. *Antrim Supervisors,*
43 Mich. 577, 5 N. W. 1018.)

Fundamentally, the questions arising out of the election are political in their nature, and this is particularly true with respect to the determining and declaring of the result. This is a matter confided exclusively to the legislature, and there can be no judicial question arise therefrom save as the legislature may have created it. We refer particularly, of course, to the questions presented in the case at bar. If election officers refuse to perform their duties, the courts can compel them so to do. (15 Cyc. 394; *State* v. *Village of McIntosh,* 95 Minn. 243, 103 N. W. 1017; *Brueggemann* v. *Young,* 208 Ill. 181, 70 N. E. 292; *Simon* v. *Portland Common Council,* 9 Or. 437; *McWhorter* v. *Dorr,* 57 W. Va. 608, 110 Am. St. Rep. 815, 50 S. E. 838; *Toncray* v. *Budge,* 14 Idaho, 621, 95 Pac. 26; *Reynolds & Henry Const.* v. *Police Jury,* 44 La. Ann. 863, 11 South. 236; *Hipp* v. *Board of Supervisors,* 62 Mich. 456, 29 N. W. 77; *Moulton* v. *Reid,* 54 Ala. 320; *Caldwell* v. *Barrett,* 73 Ga. 604; *Clarke* v. *Rogers,* 81 Ky. 43; *Williamson* v. *Lane,* 52 Tex. 335; *Link* v. *Karb,* 89 Ohio St. 326, 104 N. E. 632; *Mann* v. *Wright,* 81 Wash. 358, 142 Pac. 697.)

Election contests are not within the jurisdiction of courts of equity. (*Hester* v. *Bourland,* 80 Ark. 145, 95 S. W. 992; *Markert* v. *Sumter County,* 60 Fla. 328, Ann. Cas. 1912C, 690, 53 South. 613; *Toncray* v. *Budge,* 14 Idaho, 621, 95 Pac. 26; *Devous* v. *Gallatin County,* 244 Ill. 40, 18 Ann. Cas. 422, 91 N. E. 102; *Baker* v. *Mitchell,* 105 Tenn. 610, 59 S. W. 137.) The overwhelming weight of authority is that a court of equity has no jurisdiction to entertain, hear, try and determine the contest of an election for county seat. (*Parmeter* v. *Bourne,* 8 Wash. 45, 35 Pac. 586, 757; *Hipp* v. *Board of Supervisors,* 62 Mich. 456, 29 N. W. 77; *McWhirter* v. *Brainard,* 5 Or. 426; *Harrell* v. *Lynch,* 65 Tex. 146; *Nixon* v. *Police Jury,* 132 La. 53, 60 South. 717; *Native Lumber Co.* v. *Board of Supervisors,* 89 Miss. 171, 42 South. 665; *Wilson* v. *Town of Whitley,* 159 Ky. 69, 166 S. W. 775; *Markert* v. *Sumter County,* 60 Fla. 328, Ann. Cas. 1912C, 690, 53 South. 613; *Devous* v. *Gallatin County,*

244 Ill. 40, 18 Ann. Cas. 422, 91 N. E. 102; *Hamilton* v. *Carroll,* 82 Md. 326, 33 Atl. 648.)

No person has a property right in the location of the county seat (7 Am. & Eng. Ency. of Law, 1043; *Swartz* v. *Board of Commrs.,* 158 Ind. 141, 63 N. E. 31; *Walker* v. *Tarrant County,* 20 Tex. 16, 21), and therefore a private citizen has no standing in court to maintain a suit to prevent removal by the proper authorities. (*Armstrong* v. *Board of Commrs.,* 4 Blackf. (Ind.) 208; *Luce* v. *Fensler,* 85 Iowa, 596, 52 N. W. 517; *Walker* v. *Tarrant County,* 20 Tex. 16; *Harrell* v. *Lynch,* 65 Tex. 146; *Parmeter* v. *Bourne,* 8 Wash. 45, 35 Pac. 586, 757.)

· The relief prayed for in this case is mandatory in its nature as well as prohibitory; the plaintiff prays that this court command the defendants to maintain their offices at Medicine Lake and to restrain them from maintaining such offices at Plentywood. The case is analogous to *mandamus;* if the plaintiff cannot maintain *mandamus* to compel the defendant to maintain their offices at the county seat, he is not entitled to the relief here prayed for. The better opinion and the weight of authority is that, where the duty to be performed is public in its nature, the writ of *mandamus* can be applied for only by the duly constituted authorities, and that a private citizen (as such) will not be heard, unless he has some special interest in the performance or fulfillment of the duty such as does not pertain to other citizens. (*Thomas* v. *Hamilton,* 101 Mich. 387, 59 N. W. 658; *Dean* v. *Dimmick,* 18 N. D. 397, 122 N. W. 245; *Weeks* v. *Smith,* 81 Me. 538, 18 Atl. 325; *Chapman* v. *People,* 9' Colo. App. 268, 48 Pac. 153; *Fritts* v. *Charles,* 145 Cal. 512, 78 Pac. 1057; *Doolittle* v. *Supervisors,* 18 N. Y. 155; *State* v. *Hollinshead,* 47 N. J. L. 439, 2 Atl. 244; *Heffner* v. *Commonwealth,* 28 Pa. St. 108; *Moon* v. *Cort,* 43 Iowa, 503; *Adkins* v. *Doolen,* 23 Kan. 659; *Lyon* v. *Rice,* 41 Conn. 245; *Atwood* v. *Partree,* 56 Conn. 80, 14 Atl. 85.)

Even if the plaintiff at one time possessed a cause of action, it has been barred by laches. He has at all times been aware of his interest, if any he has, which he now claims in the location

of the county seat, and it is impossible that, being a resident of the county, he was not aware of the proceedings being carried on which would in their result, affect such interest. He was, therefore, under obligations to look into such proceedings and protect that interest, and at the same time take such steps as would prevent others from changing their position and altering their relations, to their detriment, relying upon the result of such proceedings. (*Rice* v. *County Board,* 50 Kan. 149, 32 Pac. 134; *Eggleston* v. *Kent Cir. Judge,* 50 Mich. 147, 15 N. W. 55; *People* v. *Chapin,* 104 N. Y. 96, 10 N. E. 141; *State.* v. *Cappeller,* 39 Ohio St. 455; *State* v. *Juneau County Supervisors,* 38 Wis. 554; *McConoughey* v. *Torrence,* 124 Cal. 330, 57 Pac. 81; *State* v. *Knight,* 31 S. C. 81, 9 S. E. 692; *State* v. *Superior Court,* 15 Wash. 314, 46 Pac. 232; *Moore* v. *Waco Bldg. Assn.,* 92 Tex. 265, 47 S. W. 716; *State* v. *Gibson,* 187 Mo. 536, 86 S. W. 177, 181.)

MR. JUSTICE SANNER delivered the opinion of the court.

At the election held November 3, 1914, the towns of Plentywood and Medicine Lake were presented to the electors of Sheridan county as candidates for permanent county seat, and upon the returns as canvassed by the board of commissioners, it was, on November 9, 1914, declared that Plentywood had prevailed by a majority of 46 votes. Thereafter, and on February 13, 1915, the appellant, an elector and taxpayer of said county and a resident of Medicine Lake, filed his complaint, naming as defendants the county of Sheridan, its board of commissioners, the individuals composing said board, and the persons holding the various offices in said county. The gravamen of the complaint is that Medicine Lake did, and Plentywood did not, in fact receive the highest number of legal votes cast at said election for county seat; the appearance of that result on the face of the returns being due to certain violations of the Corrupt Practices Act committed by persons acting for and in the interest of Plentywood, in consequence of which votes to the number of 300 were unlawfully influenced to be cast and

were cast for Plentywood, to the reception and counting for Plentywood of ballots to the number of 53 from persons who were not legally entitled to vote at said election, and to the miscounting of 100 or more ballots by the judges of election in certain precincts, to the prejudice of Medicine Lake.   It is not averred that any of the defendants named, except Onstad, had anything to do with any of these conditions; but it is charged that notwithstanding the true result of the election, the defendants insist on maintaining and do maintain, their respective offices at Plentywood, which prior to the election was the temporary county seat of Sheridan county, and decline to move to Medicine Lake.   The prayer asks that each and all of the defendants who have custody of the original returns, ballots and election records produce the same upon the trial, to the end that the same may, as to the precincts affected, be opened and counted; that a decree be entered declaring Medicine Lake to be the county seat of Sheridan county, requiring the county commissioners to cause the records of said county to be removed thither, commanding all the individual defendants to maintain their offices at that place, and enjoining them from maintaining said offices at Plentywood; that plaintiff recover of the defendants his costs and disbursements herein incurred, with such other relief as may be equitable and just.

To this complaint the defendants jointly demurred upon the grounds: (a) That "plaintiff has not the legal capacity or legal authority to maintain this action or to sue in the above-entitled matter"; (b) that there is a defect of parties plaintiff; (c) want of jurisdiction in the court over the subject matter of the action; and (d) that the complaint does not state facts sufficient to constitute a cause of action.   This demurrer was sustained, resulting in a judgment of dismissal, from which this appeal is taken.

1. Though third in the order of assignment, the question of jurisdiction must be disposed of *in limine.*   The contention is [1]   that the selection of county seat is a purely political function, that the legislature has not intentionally or accidentally

conferred upon the courts authority to investigate and determine the result of an election for such purpose, and that the courts have no inherent power so to do; the result must therefore be left exactly as the board of canvassers have declared it, notwithstanding that such declaration may be far from the true result of the election. This contention is supported by adroit argument, by an admirable brief and by respectable authority; nevertheless it is without merit, in our opinion. Conceding that the selection or removal of a county seat is a purely political function, the Constitution of this state (Art. V, sec. 26; Art. XVI, sec. 2), as well as the legislation upon the subject (Chap. 135, Laws 1911; Rev. Codes, secs. 2851–2856), confides that function, not to judges of election or the canvassers of the returns, but to a certain proportion of the qualified electors of the county affected. That the actual choice of the qualified electors exercised under circumstances sanctioned by law, cannot be questioned by any authority, is undoubted; a necessary corollary, however, is that such choice is not to be aborted or annulled by careless or designing election boards whose functions in respect to the result of the election are ministerial only. (*Pigott* v. *Board of Canvassers,* 12 Mont. 537, 31 Pac. 536; *State* v. *Board of Canvassers,* 13 Mont. 23, 31 Pac. 879; *State ex rel. Breen* v. *Toole,* 32 Mont. 4, 79 Pac. 403.)

For the purposes of this appeal, the allegations of the complaint are to be taken as true, and since there is no provision, constitutional or statutory, in virtue of which the executive or legislative department can effectually act in such a case, we are presented with this alternative: Either a flagrant disregard of the constitutional intendment is to go unchallenged and a most evil example to be rewarded with the fruits of its evil, or else it must rest with the courts to ascertain and decide whether the choice actually made by the requisite proportion of the qualified electors has been duly declared, or, if not, to declare it and make it effective. The latter conclusion is more in harmony with the genius of our institutions and with the

weight of authority as well. (*County of Calaveras* v. *Brockway,* 30 Cal. 325, 326; *Cerini* v. *De Long,* 7 Cal. App. 398, 94 Pac. 582; *Gibson* v. *Supervisors,* 80 Cal. 359, 22 Pac. 225; *Boren* v. *Smith,* 47 Ill. 482; *People* v. *Wiant,* 48 Ill. 263; *Dickey* v. *Reed,* 78 Ill. 261, 272; *Patterson* v. *People,* 23 Colo. App. 479, 130 Pac. 618; *People ex rel. Dean* v. *Board of Commissioners,* 6 Colo. 202; *Jones* v. *Commissioners,* 107 N. C. 248, 12 S. E. 69; *Brown* v. *Randolph County Court,* 45 W. Va. 827, 32 S. E. 165; *Simpson County* v. *Buckley,* 85 Miss. 713, 38 South. 104; *Sweatt* v. *Faville,* 23 Iowa, 321; *Krieschel* v. *Board of Commissioners,* 12 Wash. 428, 41 Pac. 186; *Braden* v. *Stumph,* 16 Lea (Tenn.), 581; *Maxey* v. *Mack,* 30 Ark. 472, 485; *Ulrich* v. *Clement* (Sup.), 124 N. Y. Supp. 133; *Shaw* v. *Circuit Court,* 27 S. D. 49, 129 N. W. 907; *Marsden* v. *Harlocker,* 48 Or. 90, 120 Am. St. Rep. 786, 85 Pac. 328; *Lindsay* v. *Allen,* 112 Tenn. 637, 82 S. W. 171.)

Why an appropriate jurisdiction for this purpose may be found in equity is instructively told in some of the decisions just cited, particularly those from Illinois and California. In answer to a claim that equity could interfere to determine which of two persons had been elected to a public office, the supreme court of Illinois defined its position thus: "It is true that in a number of county seat cases, we have held that chancery might take jurisdiction and hear and determine them. But the power was placed expressly upon the ground that the Constitution had provided that county seats should not be removed except on a vote resulting in a majority in favor of removal; and the General Assembly, in providing for the mode of holding such an election, wholly failed to provide for any means of contesting it. And to prevent the obstruction and a defeat of the rights of the majority, conferred and intended to be secured to them, it was held that the fundamental law, by implication, conferred the power on the courts of chancery. But, in making these decisions, it was on that express ground, and those cases thereby became an exception to all other cases." Indispensable to the jurisdiction of equity in any case is the absence—actual or

theoretical—of an adequate remedy at law; when that is given, equity jurisdiction is excluded. But no authority exists in this state for the proceeding technically called a "contest" to investigate a county seat election, because a county seat is not an office; this much is settled, pending action by the legislature, in *Cadle* v. *Town of Baker*, 51 Mont. 176, 149 Pac. 960. Neither, for the same reason, will *quo warranto* lie, and there is no remedy at law for such a condition as the one before us. Because this is the situation, and for only so long as it remains, we hold that the courts of record in this state, endowed as they are by the Constitution with general jurisdiction in equity, and charged as such to afford relief when no adequate remedy is provided by law, must take cognizance of matters of this kind; and, when called upon to do so, they may adopt "any suitable process or mode of proceeding" which may seem "most conformable to the spirit of the Code." (Const., Art. VIII, secs. 3, 11; Rev. Codes, sec. 6329.) In the *Cadle Case* we said: "While a court of equity would intervene to prevent a city or town unlawfully obtaining the county seat, in any instance where it did not receive the highest number of legal votes, this proceeding cannot be upheld as one instituted in equity for such purpose, for the reason that it is not alleged that the corrupt practices charged operated to influence a sufficient number of votes to change the result of the election." the complaint before us is not thus defective; sounding in equity, it alleges fraud and corrupt practices admittedly sufficient, if true; it therefore does not disclose upon its face a want of jurisdiction of the subject matter of the suit.

2. The demurrer is likewise without merit so far as the first [2] ground is concerned. Want of authority to maintain a particular suit may be, and often is, pertinent in determining whether a cause of action is stated by the complaint; but it forms no ground of special demurrer under our Code, and has nothing to do with "legal capacity to sue," as that phrase is used in subdivision 2 of section 6534, Revised Codes. (*Brown* v. *Critchell*, 110 Ind. 31, 7 N. E. 888, 11 N. E. 486; *Knight* v. *Le Beau*, 19

Mont. 223, 226, 47 Pac. 952.) What is there meant is that the plaintiff shall be free from general disability, such as infancy or insanity, or, if he sues as a representative, that he shall possess the character in which he sues. (*People* v. *Oakland W. F. Co.*, 118 Cal. 234, 50 Pac. 305; *Buckingham* v. *Buckingham*, 36 Ohio St. 68, 78; *Littleton* v. *Burgess*, 16 Wyo. 58, 16 L. R. A. (n. s.) 49, 91 Pac. 832; Pomeroy's Code Remedies, sec. 208.) The fact of such disability must appear on the face of the complaint, and a demurrer on this ground must point out the particular defect relied on. (Sec. 6535, Rev. Codes.) On the face of this complaint the plaintiff sues as an individual, and no lack of capacity in him as such is suggested; while the specification in the demurrer shows that it is merely aimed at his right in his proper person to maintain this particular suit.

3. A demurrer for defect of parties must also point out the [3–6] particulars relied on (sec. 6535, Rev. Codes), showing the absence of necessary, as distinguished from merely proper, parties. (*Beach* v. *Spokane R. & W. Co.*, 25 Mont. 379, 384, 65 Pac. 111.) The only parties whose absence is suggested as fatal are the attorney general and the county attorney of Sheridan county; and this because the subject matter of the suit, if cognizable by the courts at all, is one of general public interest in which the plaintiff is not particularly or peculiarly concerned. If the matter is cognizable judicially, as we have said it is, then, in our judgment, it is cognizable at the instance of this plaintiff. As early as *Chumasero* v. *Potts*, 2 Mont. 242, it was announced as the rule in this jurisdiction: "That where a party seeks a mere private right or private relief, he must show a specific title or right to the relief demanded, but where the relief is a public matter, or a matter of public right, the people at large are the real party, and any one of the citizens can bring the action." This rule was repeated and applied in *State* v. *Board of County Commrs.*, 21 Mont. 469, 54 Pac. 939, and in *State ex rel Clarke* v. *Moran*, 24 Mont. 433, 63 Pac. 390. As announced and repeated, it has since been acted upon without question as a proposition no longer open to discussion. (*State ex rel. Geiger* v.

*Long,* 43 Mont. 401, 117 Pac. 104; *State ex rel. Lang* v. *Furnish,* 48 Mont. 28, 134 Pac. 297; *Cadle* v. *Town of Baker, supra.)* Some of these cases, it is true, were cast in the form of special proceedings because of the nature of the relief demanded, so that the state appeared as the nominal plaintiff; but any principle which authorizes the state to sue on the relation of a private citizen, interested only as such, must likewise permit the citizen himself to sue if the cause of action can or should properly be cast in a form other than a special proceeding. The duties of the attorney general, as enumerated in our Constitution and Code, do not require him to prosecute such inquiries as the one before us, conceding that he might properly do so, while the record itself suggests that the county attorney of Sheridan county, one of the defendants at bar and the legal adviser of the defendant commissioners, is not even a proper party plaintiff in this suit.

4. Aside from the considerations above discussed, it is urged [7] that the complaint fails to state a cause of action because the defendants, in maintaining their offices at Plentywood, are complying with the law; cannot, in so doing, be violating any obligation to the plaintiff, and ought not to be harassed by this litigation; because in no event can they be put in fault until demand has been made, which the complaint does not allege; and because the complaint upon its face discloses laches. These propositions, formidable in the abstract, are not so serious as the record presents them. The demurrer is joint, raising the question whether a cause of action is stated on any theory against any of the defendants; and to this question the answer is at hand. The purpose of this suit is not to litigate, settle or administer a positive primary right peculiar to the plaintiff and infringed by the defendants; it is to have tried and determined a public question, *viz.,* where the citizens of Sheridan county have the legal right to transact public business, and to procure at the same time the relief which will make such determination effective. Not doubting, therefore, that the canvassers properly declared the result according to the returns and that

the individual defendants have properly acted upon that result as *prima facie* correct, it will nevertheless become the duty of the defendant commissioners, if Medicine Lake was in fact chosen, to obtain suitable quarters for the county administration at that place and move the county offices thither. In other words, the position of the commissioners, like that of the plaintiff, depends upon what was the true result of the election as ascertained in the suit; so that, given jurisdiction in the court below to entertain the suit, the retention of the commissioners as parties defendant must be proper because, if Medicine Lake was in fact chosen, their co-operation is necessary to the complete disposition of the matter. We do not understand that in cases of this kind one must be guilty of culpable misconduct in order to be made a party defendant; if he is the agency through which the right result must be worked out, that suffices. Officers, conscientiously seeking to discharge their duties, not infrequently find themselves perplexed and compelled to choose; they seek and act upon the advice of competent or legally designated counsel; but if, notwithstanding all this, their course is a mistake, such mistake is not to go uncorrected merely because there was no fault. If, in the present instance, Medicine Lake had received the greater number of votes according to the returns and had been declared elected, no fault could be found with the county commissioners for proceeding to remove the county records and offices to that place; but it is well established by the cases cited above that upon allegations like these here made, injunction as against the commissioners would lie to prevent such removal. (See, also, High on Injunctions, sec. 1257.) For the same reason, if the true result should require it, they can be enjoined from retaining the place of administration at Plentywood, and are proper parties in an attempt to secure such relief.

As to laches: It is the want of due diligence in the assertion [8] of a right; such diligence being measured by the requirements of particular statutes of limitations, or, short of these, by the exigencies of the case. The purpose of this suit being

to challenge the result of the election as declared, its effect, if successful, will be substantially the same as a contest; nevertheless we must repeat that this suit is not a contest. Laches, therefore, cannot be imputed to the plaintiff merely because the time prescribed for contests expired before it was commenced, and no other express limitation is suggested as controlling. This suit was brought within fifteen weeks after the election, and within fourteen weeks after the result was declared by the board of canvassers. A complaint like the one at bar ought not to be filed without the fullest investigation into the facts alleged, and such investigation, together with the resolution of the legal problems involved in formulating the case, might well justify the expenditure of as much time as was here taken, or more. Certainly, the mere lapse of so short a time cannot, without statutory command, be declared *prima facie* evidence of that want of diligence which constitutes laches.

We think the complaint states a cause of action as against the defendant commissioners at least, and, as the demurrer was joint, it should have been overruled. The judgment appealed from is therefore reversed and the cause remanded, with direction to overrule the demurrer.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.