ATKINSON, RESPONDENT, *v.* ROOSEVELT COUNTY ET AL., DEFENDANTS; MOORE, INTERVENER, LEESON, APPELLANT.

(No. 5,263.)

(Submitted March 1, 1923. Decided March 15, 1923.)

[214 Pac. 74.]

*Elections—County Seats—Removal—Injunctions Pendente Lite —Discretion—Appeal.*

County Seats—Removal—Temporary Injunction—Duty of County Officers to Remove Records—Suspension of Statutory Requirements.
   1. *Held,* on appeal from an order granting a temporary restraining order enjoining the removal of a county seat, that the provisions of section 4386, Revised Codes of 1921, that within ten days after the declaration of the result of a county seat election the records and county offices must be removed to the new county seat, and of other sections imposing a penalty upon officers who fail to keep their offices at the permanent county seat, *etc.,* are suspended pending final determination of the election contest.

Injunction *pendente lite*—Discretion.
   2. The allowance of a temporary injunction is vested largely in the sound legal discretion of the district court, with the exercise of which the supreme court will not interfere except in instances of manifest abuse thereof.

Same—When Writ Should Issue.
   3. The purpose of a temporary restraining order being to preserve the *status quo,* courts should be inclined to issue it where the plaintiff has made a *prima facie* case, or if, upon the showing made, it is left doubtful whether or not he will suffer irreparable injury before his rights can be fully investigated and determined, it not being necessary that a case be made showing that ultimately he would be entitled to prevail.

Same.
   4. Where the rights of the parties in a cause in which a temporary restraining order is prayed for depend upon a determination of difficult questions of law and irreparable injury will result to persons or property from a change in their relations and conditions if not granted, the writ should issue.

County Seats—Removal—Fraud—Temporary Injunction may Issue.
   5. Where county commissioners, acting as a canvassing board, have fraudulently canvassed the votes cast in a county seat election and have purposely declared the result improperly, removal of the county seat may be temporarily enjoined.

Temporary Injunction—Matters not to be Considered on Application.
   6. On application for an injunction *pendente lite* it is not the province of the district court, nor of the supreme court on appeal, to determine finally matters that may arise upon a trial on the merits.

*Appeal from District Court, Roosevelt County; John J. Greene, Judge.*

ACTION by J. L. Atkinson against Roosevelt County and others, in which R. J. Moore intervened. From an order denying motion to vacate a temporary restraining order, defendant George Leeson appeals. Affirmed.

*Messrs. Norris, Hurd, Rhoades & Hallett,* for Appellant, submitted a brief; *Mr. George E. Hurd* argued the cause orally.

On December 2, 1922, the board of canvassers of Roosevelt county announced the selection of Wolf Point as the permanent county seat of Roosevelt county. Within ten days thereafter it was the duty of the officers of the county to remove the offices and records from Poplar to Wolf Point. (Rev. Codes 1921, sec. 4386.) May a court of equity enjoin the execution of a public duty created by statute? Manifestly not.

Section 3423 of the California Civil Code is identical, so far as subdivision 4 is concerned, with our section 9242, providing that an injunction cannot be granted to prevent the execution of a statute by officers for the public benefit. Under this subdivision the following cases have arisen: *People* v. *Board of Supervisors,* 75 Cal. 179, 16 Pac. 776; *Randolph* v. *Stanislaus County,* 44 Cal. App. 322, 186 Pac. 625. In the first of the above cases it was sought to have an injunction issue preventing the board of supervisors from declaring the result of a county seat election and from giving notice thereof. It was held that injunction could not be granted. (See, also, *State ex rel. Standeven* v. *Armstrong,* 27 Okl. 810, 117 Pac. 332; *Dickey* v. *Reed,* 78 Ill. 261; *Scott* v. *McGuire,* 15 Neb. 303, 18 N. W. 93; *State ex rel. Welty* v. *McFadden,* 46 Neb. 668, 65 N. W. 800; *State ex rel. Ellingsworth* v. *Carlson,* 72 Neb. 837, 101 N. W. 1004; *State* v. *Durkee,* 12 Kan. 245; *Adcock* v. *Houk,* 122 Tenn. 269, 122 S. W. 979; *McWhirter* v. *Brainard,* 5 Or. 426; *Alderson* v. *Commissioners,* 32 W. Va. 640, 9 S. E.

868; *Mendenhall* v. *Henham,* 35 Fla. 250, 17 So. 561; *Clayton*
v. *Calhoun,* 76 Ga. 270; *Weil* v. *Calhoun,* 25 Fed. 865; *Willeford*
v. *State,* 43 Ark. 62; *People* v. *McClees,* 20 Colo. 403, 26
L. R. A. 646, 38 Pac. 468; *State* v. *Gibbs,* 13 Fla. 55, 7 Am.
Rep. 233; *Beal* v. *Ray,* 17 Ind. 554; *Halloran* v. *Carter,* 13
N. Y. Supp. 214; *Parmeter* v. *Bourne,* 8 Wash. 45, 35 Pac.
586.)

It is a rule of law applied in almost all jurisdictions that an
injunction will not be granted to prevent a party from exer-
cising a public office pending proceedings to determine his
title thereto.    (29 Cyc. 1416.)    A court of equity will protect the
right of that party who *prima facie* has the right to the office.
(*Harrison* v. *Stroud,* 129 Ky. 193, 110 S. W. 828.)    In the
above case it was said that in an election contest, it was error
to grant a restraining order and temporary and permanent
injunctions enjoining contestee from discharging the duties of
his office pending the hearing, since the writ of injunction
cannot be used in an election contest to prevent the holder of
the certificate of election from qualifying and discharging the
duties of the office pending the contest.    To the same effect
are: *People* v. *Miller,* 16 Mich. 56; *State* v. *Churchill,* 15
Minn. 369; *Kerr* v. *Trego,* 47 Pa. St. 292; *Hubbell* v. *Armijo,*
13 N. M. 482, 85 Pac. 1046; *Doss* v. *Howard,* 180 Ky. 413, 202
S. W. 888; *Beebe* v. *Robinson,* 52 Ala. 66; *Moulton* v. *Reid,*
54 Ala. 320; *State ex rel. Fairbanks* v. *Court,* 11 Wash. 12,
48 Pac. 741; *Casey* v. *Bryce,* 173 Ala. 129, 55 So. 810; *Stamps*
v. *Tittle* (Tex. Civ.), 167 S. W. 776.    No reason is apparent
why the rules above set forth should not apply in the present
case.    The declaration of the board is equivalent to a certificate
of election under the statute.    The complaint shows upon its
face that Wolf Point was declared selected.    Under the author-
ities, *supra,* injunction does not lie to prevent the removal of
the county offices to Wolf Point, that is to say, to prevent it
acting as county seat.

*Mr. George E. Erickson, Mr. Harrison F. McConnell* and *Mr. George A. Bangs,* for Respondent, submitted a brief; *Mr. Bangs* argued the cause orally; *Mr. S. C. Ford* and *Mr. I. W. Choate,* of Counsel.

Where it is held, as in this state, that equity has jurisdiction to hear, try and determine litigation to ascertain the result of a county seat election the authorities are unbroken that injunction will lie to restrain the removal of the county seat until the rendition of final judgment declaring the result. (2 High on Injunctions, secs. 1257 and 1319; 22 Cyc. 882; 15 C. J. 442, note 82; *Shaw* v. *Hill,* 67 Ill. 445; *Krieschel* v. *Board of Commrs.,* 12 Wash. 428, 41 Pac. 186; *Sweatt* v. *Faville,* 23 Iowa, 321.)

The granting of an interlocutory injunction rests in the sound judicial discretion of court of original jurisdiction. The temporary injunction is issued to prevent such a change pending the litigation as would involve the expense.of removal; its purpose is to prevent the unnecessary expenditure of county funds and the laying of unnecessary burdens of taxation upon the shoulders of a people already too heavily tax-ridden. (*Calaveras County* v. *Brockway,* 30 Cal. 325; *Shaw* v. *Hill,* 67 Ill. 455; *Shaw* v. *Circuit Court,* 27 S. D. 49, 129 N. W. 907; *Valley Iron Works Mfg. Co.* v. *Goodrick,* 103 Wis. 436, 78 N. W. 1096; 15 C. J. 442.)

An injunction *pendente lite* may be granted where there appears to be a substantial question between the parties and a reasonable ground to believe that complainant may ultimately be successful in his claim but it is not necessary that it should clearly appear that complainant will ultimately succeed, it being sufficient if he makes out a *prima facie* right and the court in exercising its discretion in cases where the right or title is in litigation will be largely guided by the relative inconvenience which would result from granting or refusing the relief. (22 Cyc. 822.)

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action in injunction to restrain the defendants from removing the county seat or their offices, files, records, papers and property from Poplar to Wolf Point. The defendants are the board of county commissioners and other officers of the county. It involves a county seat election contest, growing out of the election held November 7, 1922, wherein the towns of Poplar and Wolf Point were candidates for the permanent county seat of Roosevelt county. In the election, misconduct by the judges of election, illegal voting, corrupt practices, and fraud in several voting precincts are charged; the complaint being positively verified. It appears that in such election Wolf Point received a majority of the votes cast and was declared to have been selected; the canvass of votes having been completed on December 2, 1922. The action was instituted December 8, 1922, by the plaintiff, as a resident, property owner, taxpayer and qualified elector of the town of Poplar. Upon the filing of the complaint, Judge C. E. Comer issued a temporary restraining order, directed to the defendants, restraining them and each of them from removing or attempting to remove the county seat or their offices to Wolf Point, which on the face of the returns had received an apparent majority of 192 votes; and the defendants were ordered to appear and show cause, if any they had, on December 20, 1922, before Judge John J. Greene, why they should not be so restrained pending the trial of the case and until final judgment. In response to the order to show cause, the defendant George Leeson, on December 20, 1922, filed his answer, duly verified, denying the material allegations of the complaint, and alleging new matter. There was no reply filed to the answer. Thereupon R. J. Moore, a resident taxpayer, and elector in the town of Wolf Point, asked and was granted leave to intervene, and on December 20, 1922, he filed his complaint in intervention traversing the material allegations of the plaintiff's complaint. On the date set, the matter came on to be heard before Judge Greene, upon the complaint, answer of the defendant George

Leeson, and the complaint in intervention of R. J. Moore. Oral testimony was taken, occupying the court's attention several days, during which time over fifty witnesses were sworn and testified, and many exhibits were introduced. After the evidence had been introduced and argument of counsel, the court made an order denying the motion to vacate the restraining order, and directed the issuance of an injunction *pendente lite.* The court's order is as follows: "As I look at this matter, it is imperative to the people of this town, and to the people of the town of Wolf Point, and particularly to the officers of the county, that this question be decided, and decided as quickly as possible. There seems to be considerable smoke here, both at Poplar and at Wolf Point, and as long as fire is smoldering the thing to do is to put it out as quickly as it can be put out, so that the people can go upon their usual avocations of life and have this county seat fight out of their minds. It is to the interest of the people of the entire county to know where their county seat is going to be; and at the outset of this case, having in mind the statute which said it was the duty of the officers of the county to move to the county seat within ten days after it was decided permanently by the board of canvassers, having in mind that statute, I placed the burden of proof upon the plaintiff in this case, feeling that the mere filing of a formal complaint, although verified upon positive knowledge of one man, was not sufficient to grant this court authority to issue an injunction *pendente lite.*

"Now, during the trial of the case there has been a great deal of evidence introduced which shows certain irregularities. There is no question but what the irregularities that have been presented here upon the trial so far are not sufficient to overcome the election returns and the *prima facie* case that has been made out for the defense by the return of the board of canvassers. There is no question about that; but, sitting as a court of equity, and keeping in mind the status of the parties and of the subject matter of the action, there are certain times when it is better to preserve the *status quo* of the litigation and

the subject matter of the litigation until it is finally deter-
mined, and in this case I am of the opinion that it would be
unwise from a business sense to dissolve this restraining order
at this time.

"The records of this county, and the offices and the fur-
niture and the jail, and all things of that kind, that would
have to be moved to Wolf Point if I should dissolve the re-
straining order, would cause a great deal of inconvenience at
least, and some expense to the taxpayers; and I am going to
insist upon a speedy trial of this case, so that it may be finally
decided as quickly as possible, and for that reason I am going
to set the case down for trial for the 1st day of February, 1923,
and as long as I am of that opinion, that the case shall be
finally decided at such an early date, I believe it would be un-
wise to dissolve the restraining order, and for that reason it
is the order of the court that an injunction issue, *pendente lite,*
restraining the moving of the county seat from Poplar to
Wolf Point, and to the officers of the county, restraining them
from moving any of their records or county property to that
place, and in rendering this opinion and in granting this in-
junction I want it to be specifically understood that I am not
passing upon the merits of the case, or expressing any opinion
as to what the ultimate outcome will be, or what my decision
would be if I were passing upon it finally at this time. I am
basing my opinion, of course, to a certain extent upon the law,
but principally upon just good, ordinary business judgment.
So the court will adjourn until the 1st day of February, 1923,
at 9:30 o'clock A. M.''

Pursuant to this order an injunction *pendente lite* was
issued. The appeal is taken by the defendant Leeson from
the order granting a temporary injunction. Many alleged
errors are assigned, but in our opinion there is but one ques-
tion presented decisive of the appeal, *viz.*: Did the court err
in issuing a temporary injunction pending final hearing?

Many of the facts alleged in plaintiff's complaint in this ac-
tion were before this court in a *mandamus* proceeding wherein

the writ was issued requiring the board of canvassers to reconvene, canvass the returns of certain precincts by it excluded in the computation of votes cast for Poplar and Wolf Point in the election held for the permanent county seat of Roosevelt county, declare the result of the canvass, and give full force and effect thereto. (*State ex rel. Moore* v. *Patch,* 65 Mont. 218, 211 Pac. 202.)

Section 9243 of the Revised Codes of 1921 provides, in part, as follows: ''An injunction order may be granted in the following cases: 1. When it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.'' And by section 9247 it is provided: ''If the court or judge deem it proper that the defendant, or any of the several defendants, should be heard before granting the injunction, an order may be made requiring cause to be shown, at a specified time and place, why the injunction should not be granted, and the defendant may in the meantime be restrained. Cause may be shown upon affidavits or oral testimony.''

In this case, in response to the order to show cause, oral testimony of considerable volume was received, the record comprising nearly one thousand pages, besides numerous exhibits. The court was possessed with jurisdiction in equity to determine the questions involved (*Cadle* v. *Town of Baker,* 51 Mont. 176, 149 Pac. 960; *Poe* v. *Sheridan County,* 52 Mont. 279, 157 Pac. 185), and this is conceded by all parties. Under authority of the statute a temporary injunction was issued restraining the removal of the county seat, pending final determination.

At the outset counsel for the appellant argue that under [1] our statute (sec. 9242, Rev. Codes 1921) ''an injunction cannot be granted * * * to prevent the execution of a public statute, by officers of the law, for the public benefit.'' Consequently it is urged that a temporary injunction was not properly issued in this case, in view of the statutory require-

ment governing elections for the location of county seats whereby it is commanded that: "Within ten days after the declaration of the result of such election, all records and county offices of the county, if elsewhere located, must be removed to and remain at the place declared the permanent county seat." (Sec. 4386, Rev. Codes 1921.)  And it is made the duty of the county board of canvassers to canvass the returns, and "the town or place found to have received a majority of all votes cast on such questions shall be declared by the board the permanent county seat of the county.  \*  \*  \*  From the date of the declaration of the results of the election the town or place selected shall be and remain  \*  \*  \*  the permanent county seat of the county."  (*Id.*, sec. 4386.)  Furthermore, it is insisted that the law commands that "all county officers must keep their offices at the county seat" (*Id.*, sec. 4735), under penalty of punishment for a misdemeanor (*Id.*, secs. 4749, 10950), and therefore the injunction was wrongfully issued.

These sections have no possible application in the case before us.  As said by Mr. Justice Sanner, speaking for this court, respecting the effect of the provisions of section 9242, Revised Codes of 1921, in an action for an injunction against the state treasurer to restrain the sale of certain bonds authorized by Act of the legislature: "The assumption that the  \*  \*  \* Act or its execution is for the public benefit begs the whole question."  (*Hill* v. *Rae*, 52 Mont. 378, 158 Pac. 826.)  "The purpose of this suit is not to litigate, settle, or administer a positive primary right peculiar to the plaintiff and infringed by the defendants.  It is to have tried and determined a public question, *viz.*, where the citizens of Sheridan county have the legal right to transact public business, and to procure at the same time the relief which will make such determination effective.  \*  \*  \*  The position of the commissioners, like that of the plaintiff, depends upon what was the true result of the election as ascertained in the suit.  \*  \*  \*  Officers, conscientiously seeking to discharge their duties, not infrequently

find themselves perplexed and compelled to choose; they seek and act upon the advice of competent or legally designated counsel; but if, notwithstanding all this, their course is a mistake, such mistake is not to go uncorrected merely because there was no fault. If, in the present instance, Medicine Lake had received the greater number of votes according to the returns and had been declared elected, no fault could be found with the county commissioners for proceeding to remove the county records and offices to that place; but it is well established by the cases cited above that upon allegations like these here made, injunction as against the commissioners would lie to prevent such removal. (See, also, High on Injunctions, sec. 1257.) For the same reason, if the true result should require it, they can be enjoined from retaining the place of administration at Plentywood." (*Poe* v. *Sheridan County, supra.*)

It would indeed be a strange rule of law which would deny a court of equity the right to restrain the removal of a county seat on account of such statutory provisions, where fraud, corrupt practices and illegal voting are alleged and affirmatively made to appear. When a court of equity has been appealed to in such instances, and a temporary restraining order has been issued restraining the removal of the county seat until final hearing on the merits, necessarily the effect of these statutes is suspended pending the court's final determination. This must be so in view of the authority vested in a court of equity to investigate and make determination of the true result of such an election.

In a like case arising in the state of South Dakota under similar statutory provisions the supreme court of that state well said: "It is contended by petitioner that county officers are required under criminal penalty to remove and to keep their offices at the county seat. But must these officers at the peril of criminal prosecution be required to determine which of the towns is the lawful county seat? * * * We think it may be fairly held, where contest proceedings are instituted, that the result of the election is not, and cannot

be, ascertained and announced within the meaning of the law requiring officers to keep their offices at the county seat until the final determination of the contest in the courts.'' (*Shaw* v. *Circuit Court,* 27 S. D. 49, 129 N. W. 907.)

It is a well-settled rule in this state that the allowance of a [2] temporary injunction is vested largely in the sound legal discretion of the district court, with the exercise of which this court will not interfere except in instances of manifest abuse.   (14 R. C. L., secs. 11, 12, pp. 312, 313; *Blue Bird Min. Co.* v. *Murray,* 9 Mont. 468, 23 Pac. 1022; *Klein* v. *Davis,* 11 Mont. 155, 27 Pac. 511; *Shilling* v. *Reagan,* 19 Mont. 508, 48 Pac. 1109; *Bennett Bros. Co.* v. *Congdon,* 20 Mont. 208, 50 Pac. 556; *Connole* v. *Boston & Mont. etc. Co.,* 20 Mont. 523, 52 Pac. 263; *Butte & Boston Con. Min. Co.* v. *Montana Ore Pur. Co.,* 21 Mont. 539, 55 Pac. 112; *Parrot Silver & Copper Co.* v. *Heinze,* 25 Mont. 139, 87 Am. St. Rep. 386, 53 L. R. A. 491, 64 Pac. 326; *Consolidated G. & S. Min. Co.* v. *Struthers,* 41 Mont. 551, 111 Pac. 150; *Monidah Trust* v. *Sheehan,* 45 Mont. 424, 123 Pac. 692; *Lowery* v. *Cole,* 47 Mont. 64, 130 Pac. 410; *Postal Tel. Co.* v. *Nolan,* 53 Mont. 129, 162 Pac. 169; *Parsons* v. *Mussigbrod,* 59 Mont. 336, 196 Pac. 528.)

However, the party who seeks relief by injunction has the [3] burden of establishing a *prima facie* right to it.   (*Postal Tel. Co.* v. *Nolan, supra.*)   It is correctly held by this court that although the granting or refusing a preliminary injunction is a matter of discretion, the court must exercise that discretion upon the case presented properly and according to correct principles of law and evidence (*Bennett Bros. Co.* v. *Congdon, supra*), and injunction does not issue as the applicant's right, but at the court's discretion, guided by conclusions from the law and from facts of the case (*State ex rel. Board of R. R. Commrs.* v. *District Court,* 53 Mont. 229, 163 Pac. 115).

''The sole object of an interlocutory injunction is to preserve the subject in controversy in its then condition, and without determining any question of right, merely to prevent the

further perpetration of wrong, or the doing of any act whereby the right in controversy may be materially injured or endangered.'' (High on Injunctions, 2d ed., sec. 4.) And the court should be inclined to issue a temporary injunction applied for where the plaintiff has made out a *prima facie* case, or if, upon the showing made, it is left doubtful whether or not the plaintiff will suffer irreparable injury before his rights can be fully investigated and determined; it is not necessary that a case be made which would entitle him to relief at all events on final hearing. (*Parsons* v. *Mussigbrod, supra.*)

''Preliminary or interlocutory injunctions are granted to preserve the property *in statu quo* pending the determination of the suit. The right to such relief depends upon a showing of irreparable injury, and rests within the sound discretion of the court. It is not necessary that the court be satisfied that the plaintiff will certainly prevail on the final hearing; 'a probable right, and a probable danger that such right will be defeated, without the special interposition of the court,' is all that need be shown.'' (Sec. 1685, Pomeroy's Equity Jurisprudence, 4th ed.)

The purpose of the restraining order is to preserve the *status quo* until a hearing can be had and the truth of the preliminary case ascertained, so that, if a hearing is granted, it is incumbent upon the plaintiff to make a *prima facie* case, after which it is within the legal discretion of the court to grant or refuse a temporary injunction. It should be granted in all cases where there is any doubt as to whether the defendant is doing irreparable damage. (*Rea Bros. Sheep Co.* v. *Rudi,* 46 Mont. 149, 127 Pac. 85; *Postal Tel. Co.* v. *Nolan, supra.*)

Where the rights of the parties depend upon the determina-
[4] tion of difficult questions of law, and injury will result from the change, a temporary injunction should be granted.

Sanborn, circuit judge, after stating certain legal questions determinative of the rights of the parties, says: ''The first four of these questions are grave and difficult. They must in any event be considered and decided at the final hearing of the case.

\* \* \*  In this state of the case, it is neither requisite nor fitting that these questions should be determined upon this hearing, and no opinion upon them is either formed or expressed. The limit of the endeavor of this court upon this appeal will be to so protect the rights of all the parties to this suit, that, whatever may be the ultimate decision of these issues, the injury to each may be reduced to the minimum." (*D. & R. G. R. Co.* v. *United States* (8th Cir.), 24 Fed. 156, at page 159, 59 C. C. A. 579, at page 582, concurred in by Thayer and Van Devanter, the latter now a judge of the supreme court.)

In a later case the same judge, voicing the opinion of the same court, says: "The controlling reason for the existence of the judicial power to issue a temporary injunction is that the court may thereby prevent such a change in the relations and conditions of persons and property as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated. It is a familiar rule of Equity Jurisprudence that if the questions presented in a suit for an injunction are grave and difficult, and the injury to the moving party will be certain, great and irreparable if the motion for the interlocutory injunction is denied and the final decision is in his favor, while if the decision is otherwise and the injunction is granted, the inconvenience and loss to the opposing party will be inconsiderable, or probably may be indemnified by a bond, the injunction usually should be granted." (*Love.* v. *Atchison, T. & S. F. Ry. Co.* (8th Cir.) 185 Fed. 321, 331, 107 C. C. A. 403, 413.)

Mr. Justice Marshall, speaking for the supreme court of Wisconsin, well said: "Why does power in equity exist to control situations pending litigation in regard to the rights involved? The answer to that may be found written in the judicial records of every court and the works of every standard text-writer, to the effect that the power is given to be exercised so as to promote the ends of justice. It is a broad discretionary power, essential to a proper administration of

justice, and to be used with judgment and consideration for the interest of both parties, and with good common sense, to the end that irreparable loss and useless litigation may be prevented, so far as that can justly be done in advance of a final determination of the rights of the parties." (*Milwaukee E. R. & L. Co.* v. *Bradley,* 108 Wis. 467, at page 483, 84 N. W. 870, at page 876.)

Removal of the county seat may be enjoined, as where the **[5]** county commissioners have fraudulently canvassed the votes cast in a county-seat election and have purposely declared the result improperly. (22 Cyc. 882.) An injunction *pendente lite* may be granted where there appears to be a substantial question between the parties and a reasonable ground to believe that complainant may ultimately be successful in his claim; but it is not necessary that it should clearly appear that complainant will ultimately succeed, it being sufficient if he makes out a *prima facie* right and the court in exercising its discretion in cases where the right or title is in litigation will be largely guided by the relative inconvenience which would result from granting or refusing the relief. (22 Cyc. 822.)

The rule heretofore applied by this court in this class of cases is that the granting of a preliminary injunction is so largely a matter of discretion that it will be sustained, upon appeal, where there has been a reasonable showing made in support of the application in the court below. (*Parrot Silver & Copper Co.* v. *Heinze, supra; Parsons* v. *Mussigbrod, supra.*)

Mr. High in his work on Injunctions, 2d ed., sec.5, page 5, says: "It is to be constantly borne in mind that, in granting temporary relief by interlocutory injunction, courts of equity in no manner anticipate the ultimate determination of the questions of right involved. They merely recognize that a sufficient case has been made out to warrant the preservation of the property or rights in issue *in statu quo* until a hearing upon the merits, without expressing, and indeed without having the means of forming, a final opinion as to such rights." (See,

also, *Donlan* v. *Thompson Falls C. & M. Co.,* 42 Mont. 257, 112
Pac. 445; *Rea Bros. Sheep Co.* v. *Rudi, supra.*)   A court of
equity, being possessed of jurisdiction to determine the ques-
tions presented in the action, inherently has the authority to
preserve the *status quo,* pending final determination.   This
may be done by a temporary injunction.   (Section 11, Art.
VIII, Const., sec. 9243, Rev. Codes 1921; Pomeroy's Equity
Jurisprudence, 4th ed., sec. 110; *Milwaukee Elec. Ry. & L. Co.*
v. *Bradley,* 108 Wis. 467, 84 N. W. 870; *Davenport* v. *Klein-
schmidt,* 6 Mont. 502, 13 Pac. 249; *Rae Bros. Sheep Co.* v.
*Rudi, supra; Postal Tel. Co.* v. *Nolan, supra; Poe* v. *Sheridan
County, supra; Hill* v. *Rae, supra; Ashley* v. *Richards,* 32
Idaho, 551, 185 Pac. 1076.)

"It is not necessary that a case be made which would entitle
the plaintiff to relief at all events on final hearing.   If he has
made out a *prima facie* case, or if upon the showing made it
is left doubtful whether or not the plaintiff will suffer irrep-
arable injury before his rights can be fully investigated and
determined, the court ought to incline to issue the injunction
and preserve the *status quo."*   (*Rea Bros. Sheep Co.* v. *Rudi,
supra.*)

"After a contest has been instituted, the court may grant
a temporary injunction restraining the county officers from
removing their offices or records pending the determination of
the contest."   (15 C. J., p. 442.)   Injunction is the appro-
priate remedy in such instances.   (2 High on Injunctions,
1257.)   "Justice to all parties, and the clear intent of the law,
demand that there should be no removal of the records or
change of the offices until the determination of the suit con-
testing the election, if it is prosecuted with reasonable dili-
gence.   *  *  *   Hence, to prevent such removal under the
circumstances, an injunction should properly issue."   (*Shaw*
v. *Hill,* 67 Ill. 455.)   It is not the province of the district
[6]   court, nor of this court, to determine finally matters that
may arise upon a trial on the merits.   (*Blinn* v. *Hutterische
Society,* 58 Mont. 542, 194 Pac. 140, 143.)

In the case under consideration, like the *Sheridan County Case,* and as said therein, the purpose is not to litigate, settle, or administer a positive primary right peculiar to the plaintiff and infringed by the defendants. It is to have tried and determined a public question, *viz.*: Where the citizens of Roosevelt county have the legal right to transact business, and to procure at the same time the relief which will make such determination effective. (*Poe* v. *Sheridan County, supra.*) The granting or refusal of a temporary injunction rests in the sound legal discretion of the court, and where the application is sufficiently supported by competent proof, this court will not interfere pending final determination on the merits. The district court has jurisdiction to hear, try and determine this action, brought as it is to ascertain and decide whether the choice of the place of the permanent county seat as actually made by the requisite proportion of the qualified electors had been duly declared; if not, to declare it and make it effective. An examination of the record in this case shows a *prima facie* case made, and the court did not abuse its discretion in issuing a temporary injunction.

No good reason appears, and from an examination of the record we do not believe any exists, why this case has not long since been heard on the merits. Much time and money has been wasted in determining whether an interlocutory injunction is proper, when with little more time spent final determination should have been made by this time.

The order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.