No. 80-290

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

HOWARD PORTER et al.,

Plaintiff and Respondent,

vs.

K & S PARTNERSHIP, a Montana
partnership, and BRAD PEMBERTON,
JACK REHBERG et al.,

Defendants and Appellants.

---

Appeal from:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone.
              Honorable Diane Barz, Judge presiding.

Counsel of Record:

    For Appellants:

        Crowley, Haughey, Hanson, Toole & Dietrich, Billings,
         Montana
        L. Randall Bishop argued, Billings, Montana

    For Respondent:

        Anderson, Edwards and Molloy, Billings, Montana
        A. Clifford Edwards argued, Billings, Montana

---

                        Submitted:  February 17, 1981

                        Decided:  April 30, 1981

Filed: APR 30 1981

*Thomas J. Kearney*
_____
                          Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The defendants are K & S Partnership and the named members of the partnership. Collectively they are referred to as K & S. K & S appeals from the findings, conclusions and order of the Thirteenth Judicial District Court of Yellowstone County enjoining K & S from using the building here involved for any purpose other than as a single-family dwelling. Howard Porter, in his own behalf and in behalf of other owners of property in the Grandview Subdivision of Billings, is the plaintiff and is herein referred to as Porter. Following a hearing on Porter's motion for preliminary injunction, and after briefs were submitted by both parties, the District Court held that the operation of the property as an apartment triplex by K & S violates certain restrictive covenants to which the property is subject, and that Porter is not barred from enforcing the restrictive covenants by the doctrines of laches, estoppel, waiver or acquiescence. Furthermore, the court held that enforcement of the restrictive covenants will not unconstitutionally deny equal protection of the laws to K & S or the K & S tenants under the Fourteenth Amendment to the U.S. Constitution. The preliminary injunction allows K & S the opportunity to show cause at a later date why the injunction should not be made permanent.

The preliminary injunction has been stayed pending this appeal.

The issues as discussed by K & S are as follows:

1. Did the District Court err by concluding that any action to enforce the restrictive covenants is not barred by doctrines of laches, estoppel, waiver or acquiescence?

2. Did the District Court err in concluding that enforcement of the restrictive covenants will not deny equal

protection of the law to K & S or its tenants?

3. Did the District Court err in granting to Porter the preliminary injunction?

4. Did the District Court err in refusing to admit certain evidence?

We hold that the District Court erred in granting the preliminary injunction. This answers the third issue and disposes of this appeal. We do not consider issues number one and two because they are not properly before this Court on the merits. A discussion of the defenses on the part of K & S would be premature pending final determination at the trial court level. We do discuss the evidence questions of issue number four.

Porter and the others whom he represents are property owners in and residents of Grandview Subdivision in Billings. The original owner of the platted lots in that subdivision, in 1931, executed and recorded a "Declaration of Restrictions Affecting Grandview Subdivision at Billings, Montana". In 1980 K & S purchased an older house in the subdivision for the admitted purpose of operating the house as an apartment triplex. The purchasers are alumni of Kappa Sigma fraternity, and rent primarily to members of that fraternity at Eastern Montana College. Porter and the homeowners he represents seek an injunction and damages based upon their claim that such use violates the restrictions placed on most subdivision property in 1931.

The Declaration of Restrictions is comprehensive and is expressly made "for the use and benefit of the present owners and for its future grantees". The restrictions cover such things as number and kind of buildings which can be constructed, minimum costs of residences, width of front and

side yards, fence heights, and window and porch projections. The following portions of such Declaration of Restrictions are pertinent:

"PERSONS BOUND BY THESE RESTRICTIONS

"All persons . . . who now own or shall hereafter acquire any interest in any of the lots in Grandview Subdivision . . . shall be taken and held to agree and covenant with the owner of the lots shown on said plat and with his heirs and assigns to conform to and observe the following covenants, restrictions and stipulations as to the use thereof . . .

"USE OF LAND

"Section 1. None of said lots may be improved, used or occupied for other than private residence purposes and no flat or apartment house, though intended for residence purpose, may be erected thereon. Any residence erected or maintained thereon shall be designed for occupancy by a single family.

"Section 9. DEFINITIONS

"Family--One or more persons living, sleeping and usually cooking and eating on the premises, as a single housekeeping unit.

"Section 12. RIGHT TO ENFORCE

". . . [T]he owner or owners of any of the above land shall have the right to sue for and obtain an injunction, prohibitive or mandatory, to prevent the breach of, or to enforce the observations of the restrictions above set forth, in addition to ordinary legal action for damages, and the failure of . . . the owner . . . of any . . . lot . . . to enforce the restrictions herein set forth, at the time of its violation, shall in no event be deemed to be a waiver of the right to do so thereafter. . ."

Porter filed a verified complaint and application for preliminary injunction on March 14, 1980. K & S filed its answer on April 7, 1980. The answer denies any violation of the restrictive covenants, and interposes defenses sounding in equal protection, waiver and acquiescence, laches and estoppel. Hearing on the application for preliminary injunction was held on April 15, 1980.

The evidence shows that a Mrs. Froney, the previous owner, who sold the house to K & S, had rented out rooms or

apartments continuously over a period of 40 years. About 1940 Mrs. Froney began renting her basement to five or six female students at the request of Eastern Montana College. In 1952 Mrs. Froney remodeled her attic and rented it out as an apartment with a separate entrance. Mrs. Froney continued renting out both the basement and attic to different persons and family units until 1980, when she sold the house to K & S, having advertised and represented it as a triplex unit. Porter admits knowing of Mrs. Froney's practice of renting out rooms. In substance, Porter stated they allowed this because they knew her, knew she lived on the premises, and knew that she would run a quiet place. Also Porter and the others believed that she badly needed the money. K & S testified that the purchase of the house was made believing it to be a legal triplex. Brad Pemberton, who acted for K & S, stated that he had no knowledge of the restrictive covenants prior to purchase and would not have bought the unit if he had known of them.

Other testimony at the hearing indicates that several other restrictions have not been enforced for many years. A fraternity member living in the triplex stated that he had counted numerous fences which were in violation of fence height restrictions. General allegations of apartments in other houses were also made. K & S attempted to introduce a petition signed by other residents of the subdivision which states that those residents have no objection to the triplex, but the petition was excluded by the trial court as not relevant. Finally, K & S submitted evidence to prove that, due to development in the surrounding area over the years, the character of the subdivision has changed so greatly that enforcement of the restrictions now would be inequitable.

The District Court specifically found that the use of the house by K & S as a triplex is a violation of the restrictions; that K & S had notice of the restrictions at the time it purchased the house; that the previous use of the house by Mrs. Froney was materially different from the present use, and that Porter is not barred by estoppel, laches or waiver from enforcing the restrictions. In addition, the District Court found that enforcement of the restrictions against K & S is not a denial of equal protection; and, that evidence of change and development in the subdivision and in surrounding areas offered by K & S to show change in the character of the subdivision such that enforcement of the restrictive covenants now would be inequitable, was not relevant to the action.

At the outset, we note that this appeal does not involve a judgment rendered after trial on the merits. It involves a preliminary injunction granted after a hearing, with such injunction to remain in effect only until the determination on the merits after the final hearing. Preliminary injunctions are governed by Title 27, Ch. 19, Parts 2, 3 and 4. Specifically, section 27-19-201, MCA, provides when preliminary injunctions may be granted:

> "When preliminary injunction may be granted. An injunction order may be granted in the following cases:
>
> "(1) when it shall appear that the applicant is entitled to the relief demanded and such relief or any part thereof consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
>
> "(2) when it shall appear that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant . . ." (Emphasis added.)

The preliminary injunction statutes have been construed and applied by this Court many times. The statutes were

amended by the 1979 Montana legislature, but the changes are procedural in nature. The statutes now require a hearing on the application in all cases, whereas prior to 1979 a preliminary injunction could have been granted on the pleadings alone under certain circumstances. See Ch. 399, Laws of Montana (1979).

The allowance of a preliminary injunction is vested in the sound legal discretion of the District Court, with the exercise of which the Supreme Court will not interfere except in instances of manifest abuse. Atkinson v. Roosevelt County (1923), 66 Mont. 411, 421, 214 P. 74, 76-77; Parsons v. Mussigbrod (1921), 59 Mont. 336, 340, 196 P. 528, 529. An applicant for a preliminary injunction must establish a prima facie case, or show that it is at least doubtful whether or not he will suffer irreparable injury before his rights can be fully litigated. If either showing is made, then courts are inclined to issue the preliminary injunction to preserve the status quo pending trial. Rea Bros. Sheep Co. v. Rudi (1912), 46 Mont. 149, 160, 127 P. 85, 87.

"Status quo" has been defined as follows:

"'. . . the last actual, peaceable, noncontested condition which preceded the pending controversy . . .'" State v. Sutton (1946), 2 Wash.2d 523, 98 P.2d 680, 684; State v. Oldham (1978), 283 Or. 511, 584 P.2d 741, 743. See also 40 Words and Phrases, "Status Quo".

The last peaceable, noncontested condition here consisted of Mrs. Froney's practice of renting out the second story apartment and basement apartment as well as living on the main floor herself. The established status quo then, would be that of a three-family unit, as defined by the restrictions. The order of the District Court has the effect of altering the status quo by requiring that the usage be limited to occupancy by a single family. The effect of this injunction

is to substantially reduce the rental from the dwelling because it could no longer be rented as a three-family unit.

The District Court did not find that Porter might suffer injury if the preliminary injunction did not issue. The District Court apparently proceeded under section 27-19-201(1), MCA, which provides for the granting of a preliminary injunction when it appears that the applicant is entitled to the relief demanded and such relief consists in restraining the commission of an act. Although no finding of injury or damage is required for a preliminary injunction under that paragraph, it is the court's duty to minimize the injury or damage to all parties to the controversy. As stated in Atkinson, 66 Mont. 423, 214 P. 77:

> ". . . the limit of the endeavor of this court upon this appeal will be to so protect the rights of all parties to this suit, that, whatever may be the ultimate decision of these issues, the injury to each may be reduced to the minimum." (Emphasis added.)

The potential loss of rental income by K & S is a significant factor to be considered.

In rebuttal of Porter's prima facie showing that the restrictive covenants are being violated, K & S submitted evidence tending to show the following: (a) long-standing acquiescence by the neighborhood in violations of the restrictive covenants by Mrs. Froney, the prior owner and renter of the three-family unit, (b) violations of other restrictive covenants throughout the subdivision, (c) present usage by K & S that is substantially similar to that of Mrs. Froney, in that both rented the property as a three-family unit. We find such evidence does rebut the prima facie showing made by Porter that the restrictions are being violated.

Having concluded that Porter's prima facie case was rebutted, that the status quo would not be preserved, and that

-8-

the injury to all would not be minimized, we hold that issuance of the preliminary injunction was a manifest abuse of discretion. The injunction is dissolved, and the case remanded to the District Court for trial on the merits.

We point out that we express no opinion as to the ultimate merits of the action. "It is not the province of the district court, nor of [the Supreme Court], to determine finally matters that may arise upon a trial on the merits." Atkinson, 66 Mont. 425, 214 P. 78; Blinn v. Hutterische Soc. of Wolf Creek (1920), 58 Mont. 542, 554-555, 194 P. 140, 143. In granting temporary relief by injunction, courts of equity should in no manner anticipate the ultimate determination of the questions of right involved. Rather, the court should decide merely whether a sufficient case has been made out to warrant the preservation of the property or rights in status quo until trial, without expressing a final opinion as to such rights. An applicant need not make out such a case as would entitle him to final judgment on the merits. Atkinson, 66 Mont. 422, 424, 214 P. 77, 78; Rea Bros. Sheep Co., 46 Mont. 160, 127 P. 87. By the same token, an applicant who could show that he is entitled to final judgment on the merits still might not be entitled to a preliminary injunction. As stated in the above-cited cases, the limited function of a preliminary injunction is to preserve the status quo and to minimize the harm to all parties pending full trial. If a preliminary injunction will not accomplish those purposes, then it should not issue. Findings and conclusions directed toward the resolution of the ultimate issues are properly reserved for final trial on the merits.

Appellants raise appropriate questions of evidence. In finding of fact no. 18, the District Court found that evi-

dence as to changes in the character of the subdivision caused by developments in neighboring land was not relevant to the question whether the restrictions on the triplex are being violated. The authorities agree, however, that where the restricted area has changed so radically over the years such that the purpose and intent of the restrictions are totally defeated, then equity cannot enforce the restrictions. The change must be so radical and permanent as to neutralize the benefits of the restrictions. 7 Thompson on Real Property Ch. 48, §3174 (pages 211-216); 5 Powell on Real Property, Ch. 60, §684; 20 Am.Jur.2d Covenants, Conditions and Restrictions, §§281, 282.

At the trial on the merits, the District Court should consider the effect on the subdivision of changes inside and outside the specific restricted area. Widespread renting of apartments as alleged, congested streets and increased traffic, and development of nearby institutions like St. Vincent's Hospital and Eastern Montana College, all could have the effect of defeating the purposes of the restrictions. The above-cited authorities do state, however, that greater weight should be given to changes inside the boundary of the restricted area than to changes in neighboring areas.

The District Court granted Porter's motion in limine to exclude a petition offered by K & S, and signed by other residents of the subdivision, stating that the residents have no objection to operation of the triplex. The District Court excluded the petition as not relevant. Appellant claims error, and asks that this Court declare the petition admissible.

"Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable

. . ."  Rule 401, Mont.R.Evid.  This standard allows wide

admissibility.  Commission Comment to Rule 401; Rule 402.

The petition appears admissible on the question whether the

character of the neighborhood has changed so radically as to

render enforcement of the restrictions inequitable, and

should be considered at trial on the merits.

We remand the case to the District Court for trial con-
sistent with this opinion to determine if a permanent in-
junction should be granted.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy dissenting:

The reasons given to dissolve the preliminary injunction by the majority will be inexplicable to the District Court, as indeed they are to me.

There is no showing in the majority opinion that the plaintiff here failed to establish a _prima_ _facie_ right to preliminary injunctive relief, Troglia v. Bartoletti (1969), 152 Mont. 365, 451 P.2d 106; nor that the District Court in issuing the preliminary injunction made an erroneous conclusion of law, Ring v. Spina (2d Cir. 1945), 148 F.2d 647. Instead, the majority dissolves the injunction on an incorrect perception of the "status quo involved" and something that is defined as "a duty to minimize the damages or injury to all parties" which I determine to be a reference to irreparable harm or damages. The opinion constitutes a step-out in the field of injunctive law, a step which I refuse to take.

In this dissent, I will argue that: (1) the District Court was required by law to make its findings here; (2) the issues on which the District Court made findings and conclusions were issues raised by the appellant in opposition to the preliminary injunction; (3) a fullblown trial of those issues occurred before the District Court; (4) the preliminary injunction was properly issued by the court; (5) the majority opinion misconstrued the "status quo" requirement for preliminary injunctions; and, (6) the "irreparable harm" is presumed in cases of this sort.

I. The District Court had a duty to make findings of fact here.

The duty of the District Court to make findings upon the fact issues presented in the hearing on the motion for a preliminary injunction is clear. Rule 52(a), M.R.Civ.P. provides:

> ". . . in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action."

It is an established rule of law that the findings of fact are to receive such a construction as will uphold rather than defeat the judgment thereon. Ballenger v. Tillman (1958), 133 Mont. 369, 324 P.2d 1045.

II. & III.  The appellants raised the issues that the district judge decided.

The findings of fact and conclusions of law required to be made by the District Court in matters tried without a jury are the foundation for the decision of the court. The findings must be ultimate facts, which are essential to determine the conclusions upon which the court rests its decision. Marriage of Barron (1978), ___ Mont. ____, 580 P.2d 936, 36 St.Rep. 891. The findings, of course, must relate to the material issues of fact, and the conclusions, based upon the findings, must dispose of the legal issues raised in the matter before the court.

The majority opinion objects to the District Court reaching a "final opinion" on the merits of the principal case. However, the majority opinion ignores this record in which the District Court entered findings and conclusions which affirmatively found: that the present use of the triplex is materially different from past use; that the plaintiff's action is not barred by the doctrines of waiver, estoppel or laches; and that the homeowners did not discriminate

-13-

against a certain class of residents so as to create a problem of equal protection.

Those same issues were raised by the <u>defendants</u> at the motion for the preliminary injunction hearing. They insisted to the district judge that those same issues were a bar to the issuance of the preliminary injunction.

K & S Partnership entered into a contract for deed with Leona S. Froney on January 2, 1980, for the purchase by the partnership of Lot 1, Block 4, Grandview Subdivision. Brad Pemberton, a member of Kappa Sigma Fraternity, is the only partner at present. Pemberton, with loans from other Kappa Sigma members in Billings and with Fraternity Building Corporation assets of some $2,000 or $3,000 funded the down-payment. Although Pemberton appears to deny that the purpose of the purchase was to provide a chapter house for the Kappa Sigma unit at Eastern Montana College of education, at the time of the trial, there were eight male students living in the residence on the purchased premises, seven members of Kappa Sigma, and one transfer student associated with Sigma Nu.

K & S took possession of the premises on January 2, 1980; plaintiffs filed their verified complaint on March 14, 1980.

The district judge found, and the evidence sustains her, that Leona Froney began renting portions of her house in 1940, but that in all the period of time until she sold the house, Leona Froney exclusively lived on the ground floor of the home. It was Leona Froney's practice to have only one renter in the basement apartment and one in the upstairs apartment and that she had extremely strict rules with respect to the conduct of the renters. Leona Froney

testified that the rental money she received was necessary to sustain her and her daughter, whom she was educating. The court found that these facts were known by the neighbors, but that the "technical violations" of the restrictions were overlooked because of their concern for Leona Froney's welfare.

With the advent of K & S Partnership, the use of the premises changed to this extent: there were eight people living on the premises, none related to each other and no owner on the premises. The tenant on the main floor, a member of Kappa Sigma Fraternity, was the "property manager" who was in charge, and who was paid $25 for his services by K & S Partnership.

In simple terms, Leona Froney was not operating a fraternity house; K & S Partnership was. The operation of a fraternity house is not the renting of a "three-family unit" which is the purported status-quo upon which the majority depends.

The principal partner testified that he would not have purchased the house if it could not have been used as it is now being used, yet he knew of the restrictions because they were in the title insurance policy he procured at the time of purchase, and he had been informed by a lawyer that his proposed usage of the house would pass muster under the restrictions. Leona Froney testified:

"Q. They didn't try to conceal the fact
that they intended to use it as a fraternity
house at all, did they? A. No, they had
said that they had already found lawyers
that said it was okay."

Leona Froney was referring to a conversation that occurred during the negotiations for the purchase of the house.

It was the foregoing new use of the dwelling house that the district judge found "violates the restrictions" and

-15-

should be enjoined. There can be no cavil that K & S Partnership's use of the dwelling violates that section of the restrictions which states that the buildings in the subdivision shall be "one family dwellings--a detached building, designed for, or occupied exclusively for one family." It should be clear that a dwelling house used as a fraternity house violates a single-family dwelling restriction as a matter of law. The District Court was not erroneous in this finding and this Court should not set that finding aside under Rule 52(a), M.R.Civ.P.

The verified complaint of the neighbors in Clanton Heights Association was filed on March 14, 1980. On the same day, the plaintiff moved for a preliminary injunction, and gave notice to the partnership that a hearing on the motion for a preliminary injunction would be heard before the court on April 14, 1980. The defendants filed their answer to the verified complaint on April 7, 1980. They raised as affirmative defenses: (1) an unconstitutional denial of equal protection of the laws and due process; (2) waiver on the part of the plaintiff to Leona Froney's use of the premises, through a long-standing acquiescence with knowledge; (3) estoppel by virtue of long-standing acquiescence with knowledge; and, (4) laches. The defendants raised those same objections in a brief filed with the District Court on the date of the hearing, and in the conclusion of the brief, asked the court to deny the plaintiffs their requested relief (which at that time was an application for preliminary injunction) and to dismiss the complaint. After the hearing, the defendants submitted proposed findings of fact and conclusions of law to the district judge. In their proposed conclusions, they asked the court to conclude that the restrictions had to be construed strictly (Proposal 4) that the long acquiescence of the plaintiff in using the premises

-16-

for other than private one-family residences constituted abandonment and laches (Proposal 5), that plaintiff's course of acquiescence misled K & S Partnership to expend large sums of money to purchase the property and plaintiff should be estopped (Proposal 6), and that enforcement of the restriction would constitute a denial of the tenant's right of equal protection and privacy guaranteed by federal and state constitutions (Proposal 10).

In their brief submitted with their proposed findings and conclusions, the contention was made that "plaintiff is barred either by estoppel or laches or both, from enforcing the deed restriction in question. . ."

It is clear that the issues raised by the defendants, are precisely the issues upon which the District Court made findings and conclusions in granting the injunction. The District Court had no other course but to rule on them because if these defenses to the issuance of a preliminary injunction were well-grounded, plaintiff is not entitled to a preliminary injunction.

The majority opinion dissolves the preliminary injunction issued by the court upon the ground that ultimate resolution of the issues should await final trial on the merits. The District Court entered specific findings and conclusions in which it affirmatively found that the present use of the triplex is so materially different from past use that the action is not barred by the doctrines of waiver, estoppel, or laches; and that the landowners did not discriminate against a certain class of residents, so that the claim of denial of equal protection is unfounded." Those were precisely the issues that were presented by the appellants to the district judge at the time of the hearing

on the preliminary injunction and on which the district judge had a duty to make a determination both as to fact and as to law, to determine the propriety of issuing the preliminary injunction.

The District Court did not preclude the matter when it issued its preliminary injunction in this case. The district judge contemplated a further hearing on the matter by providing "the defendant appear before the court at a date and time to be set at the convenience of court and counsel to show cause why, if any there be, said injunction should not be made permanent."

I cannot envision a case where "an applicant who could show that he is entitled to final judgment on the merits still might not be entitled to a preliminary injunction," unless it may be this case. Such a result will always require an illogical decision.

The majority opinion takes too narrow a view of the power of the District Court in these matters. The District Court has power to issue a preliminary injunction upon a prima facie case being established by the person seeking the injunction. A prima facie case is clearly established here. That the District Court has made decisions which may eventually be the ultimate conclusions in the case is not a valid reason for dissolving the preliminary injunction. It should rather strengthen the need for the preliminary injunction. It is said by the Idaho court (by way of dictum) in Farm Service, Inc. v. United States Steel Corp. (1966), 90 Id. 570, 414 P.2d 898, 906-07:

> "The rule against granting a preliminary injunction which will have the effect of giving to the party seeking the injunction all the relief sought in the action, does not preclude the granting of such an injunction in a proper case. Rather, it is to be understood as requiring the moving party in such case to show a clear right to the relief sought . . ."

The Idaho court has enunciated the rule that ought to apply in this Court. If the plaintiffs here have established a clear right to a preliminary injunction, which they have, the preliminary injunction should not be dissolved upon the ground that the District Court had made ultimate conclusions on defenses raised by the other parties. Otherwise, we make a mockery of the rule that the allowance of a preliminary injunction is vested in the sound legal discretion of the District Court, with the exercise of which the Supreme Court will not interfere except in cases of manifest abuse.

IV. The preliminary injunction was properly issued by the District Court.

What we have said foregoing about the applicable law and facts in this case, and the issues raised by the parties at the time of the preliminary injunction hearing established beyond doubt that plaintiff has shown a prima facie basis for the preliminary injunction, and it should not be dissolved by us.

V. The majority misconstrues the "status quo" requirement for injunction.

Another reason given by the majority is that the District Court did not preserve the "status quo" in granting the preliminary injunction. The only status quo that the injunction should preserve, if necessary, is the use Leona Froney placed on the real property.

> ". . . The status quo to be maintained, however,
> is not necessarily the state of affairs that
> exists at the time the suit was filed. In fact, if
> it were, then few injunctions would be enforceable
> pending appeal since the vast majority of suits
> seeking injunctions are filed after the defendant
> has started to do the disputed acts. Further,
> if the status quo were limited to the state of
> affairs at the time of filing, a wrongdoer would
> be permitted to continue engaging in the disputed
> conduct until the case was finally resolved, as
> long as the wrongdoer began to act before the
> plaintiff filed suit. For this reason, the
> status quo to be preserved should be the last

undisputed state of affairs that existed before the events that gave rise to the pending controversy occurred. This is the rule for granting preliminary injunctions, which are granted even before there has been a trial on the merits. . ." State ex rel. McKinley Automotive v. Oldham (1978), 283 Or. 511, 584 P.2d 741, 743.

The majority opinion has not followed the proper rule for preserving the status quo.

VI. <u>Direct evidence of irreparable harm is unnecessary in this type of case</u>.

In an action relating to violations of restrictions which run with the land, it is not necessary that there be direct evidence of damages to the pleading parties. Irreparable harm is presumed. An injunction to enforce a covenant or restriction may issue even absent a showing of the amount of damages caused by the breach. Sandstrom v. Larsen (1978), 59 Haw. 491, 583 P.2d 971, no showing is necessary that the violation has changed the character of the neighborhood. Carter v. Conroy (1976), 25 Ariz. App. 434, 544 P.2d 258. The preliminary injunction, on a <u>prima facie</u> showing, should be granted regardless of relative damage. Gladstone v. Gregory (1979), 95 Nev. 474, 596 P.2d 491. The injunction can issue in the absence of proven damages, Jinkins v. City of Jal (1963), 73 N.M. 173, 386 P.2d 599.

Of course, if irreparable harm is shown in the evidence, then the burden of the plaintiff to make a <u>prima facie</u> case is lessened, because then the court balances the hardships between the parties. (A. J. Industries, Inc. v. Alaska Public Service Com'n (Alaska 1970), 470 P.2d 537, modified on other grounds, 483 P.2d 198.)

In addition to the foregoing diversities with the majority opinion, I also disagree with the decision making the petition signed by other residents of the subdivision admissible in evidence. In my opinion, the petition is not relevant to any issue before the District Court.

The restrictions are binding upon any owner until a majority of all the owners holding fee simple title to the lots in the addition (excluding certain lots) release the same to all land in the subdivision by an executed and acknowledged instrument in writing.

The petition which is offered recites, "we, the under-signed residents of Grandview Subdivision, have no objection to the continued use of the premises at 202 Locust as a residence for the members of Kappa Sigma Fraternity."

There is no foundation to show that the "residents" are owners in fee simple of the property involved, nor is it clear from the language of the petition that the signers understood that they were waiving the restrictions which exist with respect to those properties. Fortunately for all of us, legal rights are not decided by majority vote, even if the petition consisted of the majority of owners which it it apparently does not.

In that situation, I feel it has no relevance and should not be admitted.

For the reasons foregoing, I would preserve the injunction in force and remand for a final decision by the District Court. The only difference between my position and that of the majority is that the preliminary injunction is dissolved under the majority opinion, and I would keep it in force. Under both situations, there will be a trial to determine the permanent result here.

My purpose in filing this dissent is to assure the members of the Bar that this Court is not unanimous in the narrow construction of the injunctive powers of the District Court.

_____John C. Shufly_____
                    Justice

-21-